## William Landis v. John M. Wolfe.

1. ACTIONS—*Assumpsit for Goods Wrongfully Taken.*—One whose goods have been wrongfully taken from him, or unlawfully detained, has no cause of action in assumpsit against the wrongdoer, unless either the goods have been converted into money, or into money's worth, or there has been a subsequent promise to pay.

2. SAME—*Assumpsit Will Lie Where Property Has Been Actually Used.*—Where the defendant has actually used the property an action of assumpsit will lie.

Assumpsit, for goods sold and delivered. Appeal from the Circuit Court of Clay County; the Hon. SAMUEL L. DWIGHT, Judge presiding. Heard in this court at the August term, 1902. Reversed and remanded. Opinion filed March 2, 1903.

On the 9th day of March, 1901, appellant and appellee entered into the following contract:

" I, William Landis, agree to sell my entire stock of merchandise, including store fixtures, except all boots and shoes, to J. M. Wolfe at net invoice price, to be invoiced between this and March 23, and all goods sold after this date to be charged to the said J. M. Wolfe at cost price and he to receive the proceeds after this date when the trade is fully consummated.

March 9, 1901.                                          WILLIAM LANDIS."

" I, J. M. Wolfe, have this day bargained for the stock of goods, except the boots and shoes, owned by William Landis, and agree to pay for same as follows: My equity in farm of 164.14 acres in Blair Township, Clay County, Ill., amounting to $5,400; $700 personal property, more or less, consisting of horses, cattle, hogs, farm implements, hay, corn, etc., exact amount to be determined when hay

and corn are invoiced; $800 due in twelve months, secured by a bankable note; balance to be secured by a note signed by myself and wife and mortgage on store fixtures. I further agree to pay $16 interest on mortgage on farm for year ending March 20, 1902, and if parties will not accept payment of March 20, 1902, I agree to pay the interest from that time until the mortgage fully matures.

March 9, 1901.                    JOHN M. WOLFE."

On the 11th day of March, 1901, U. S. Wolfe, a brother of appellee, executed the following agreement:

"I, U. S. Wolfe, agree to secure the payment of $800 to William Landis for merchandise bought of J. M. Wolfe as soon as said merchandise is invoiced.

U. S. WOLFE."

The stock of goods mentioned in the agreement was located in the city of Sullivan, Moultrie county, Ill., and it is admitted that appellee had delivered to appellant the $700 item of personal property which on invoice footed up $731.96.

The evidence of other acts done under this contract is conflicting, on nearly all vital points. On the part of appellant the evidence tends to show that appellee had prepared a warranty deed for the land in Clay county; that, a question having arisen as to when appellee should be entitled to possession of the stock of goods, the deed was taken to an attorney in Sullivan, who was to determine what ought to be done in furtherance of the contract to entitle appellee to the possession and ownership of the stock of merchandise. At this interview both parties were present and Mr. Whitfield, the attorney, testified that nothing was said at that time, whether the deed was to be a warranty or a quit-claim; that the parties had already arranged that U. S. Wolfe should, by his agreement above quoted, take care of the $800 bankable note; that he told the parties the invoice had not been completed and as the $800 item had been taken care of and the personal property had been accepted by appellant, all that remained to be done was for appellee to execute the deed to the land and the chattel mortgage on the fixtures, and the note to be

signed by appellee's wife, and when these acts had been done, appellee would be entitled to the stock of goods. Appellant stated that he had important business away from Sullivan and the chattel mortgage and the invoice of the fixtures might be delayed until he came back. This conversation took place in the forenoon of March 22d: in the afternoon of that day appellant left the city of Sullivan, telling his clerk in charge of the stock of goods to let appellee have the key to the store when he brought him the deed for the land. During the same afternoon appellee and his wife went to Mr. Whitfield's office and executed the deed, at which time appellant was not present. By direction of appellee, Whitfield changed the word " warrant " in the deed to " quit-claim," and appellee delivered the deed to appellant's clerk, who delivered the key of the store to appellee. Appellant returned to Sullivan on Monday, March 25th, and found that the deed had been changed; a dispute followed which ended in appellee directing appellant to get out of the store. A few days after, appellant secured a temporary injunction, in the Moultrie Circuit Court, enjoining appellee from interfering with appellant's possession of the store and directing him to turn over to appellant the key to the premises. At the September term of the Circuit Court, the injunction suit was heard, and the court dismissed the bill for want of equity. On the 5th of April, 1901, appellee sued out a writ of attachment from the Circuit Court of Clay County, directed to the sheriff of Moultrie county, who levied on the stock of merchandise; another writ was also sued out and directed to the sheriff of Clay county, and he levied on certain real property in that county.

Appellee's evidence tends to show that the parties had a conversation prior to the time they went to Whitfield's office, and appellant then claimed appellee ought to give him a warranty deed; that the agreement between the parties was then read over, and appellant said the only deed he was entitled to was a quit-claim; but this conversation is denied by appellant.

It is admitted that the invoice of the stock and fixtures amounted to $9,391.55, so that the amount which would have to be secured by a chattel mortgage and note, to be executed by appellee and wife, would be $2,459.59. This part of the contract, as we understand the evidence and the contention of appellee, appellee had neither performed nor offered to perform, prior to the bringing of this suit, and it was not important whether he had or not, because under the terms of the agreement of March 9th, appellant was only entitled to a quit claim deed; the items of $700 and $800 had been adjusted by the parties themselves, and appellee having delivered the deed to appellant's clerk, according to appellant's directions, the ownership and right of possession had passed to appellee, since appellant had agreed that the chattel mortgage and note for $2,459.59 might be executed afterward, as Mr. Whitfield suggested.

The original declaration alleged that appellant was indebted to appellee in the sum of $8,000, "for unlawfully taking possession of one stock of merchandise, belonging to the plaintiff in Sullivan, Illinois, and converting the same to his own use, and being so indebted," etc. By various amendments during the course of the trial the *ad damnum* was amended to $12,500; the declaration itself was so amended as to allege an indebtedness for goods, wares and merchandise "sold and delivered" to appellant. The trial resulted in a verdict against appellant in the sum of $11,000; after overruling a motion for a new trial, judgment was rendered on the verdict and appellant has brought the appeal here to reverse the judgment.

JOHN R. EDEN, J. K. MARTIN and E. J. MILLER, attorneys for appellant.

R. M. PEDRO and MILLS BROS., attorneys for appellee.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

The groundwork of the present action is the claimed right of appellee to recover in assumpsit, the value of the

entire stock of goods which he claims appellant wrongfully took and converted to his own use; the action was not limited to such goods as appellant may have sold, used, or traded away, after he took the goods, and before the levy of the writ of attachment. If appellee's contention should .be admitted to be that he was the owner of the goods, and appellant has wrongfully taken them and converted them so as to raise a trover liability, still, under the law of this state he is not entitled to recover in this action of assumpsit. As long ago as the case of Morrison v. Rogers, 2 Scam. 317, the law has been declared to be, that one whose goods have been wrongfully taken from him, or unlawfully detained, has no cause of action in assumpsit against the wrongdoer, unless either the goods have been converted into money, or into money's worth, or there has been a subsequent promise to pay. This case and the principles which it lays down, has never been departed from by the Supreme Court; on the contrary, the decision has been followed by many adjudications of that court and the Appellate Courts in this state, in which the case is expressly approved; so strongly has this principle been enforced that in a case where there was a contract of sale which was void by reason of the fraud of the purchaser, and the seller rescinded the sale because of the fraud, it was held that assumpsit would not lie, but that the plaintiff was driven to his action of trover or replevin, if the action were commenced prior to the time of the expiration of·the credit given in the void contract. Kellogg v. Turpie, 93 Ill. 265. In that case the rights of the plaintiff originated in an apparent contract of sale, and yet it was determined that if the plaintiff rescinded the contract, he could not appeal to it to show that the origin of his right was *ex contractu;* in the case at bar there is no attempt to·show anything except that appellant wrongfully took and wrongfully detains the stock of merchandise in dispute, and by those facts it is sought to force upon him an involuntary purchase. This can not be done under the law as declared by the course of the decisions in this state. Where the de-

fendant has actually used the property, as distinguished from taking and detaining it, there is authority in this state for saying that the action will lie. T. W. & W. Ry. Co. v. Chew, 67 Ill. 378; City of Elgin v. Joslyn, 136 Ill. 525. This case is in itself a good illustration why the distinction lying at the basis of the decisions, should be insisted upon. When the defendant wrongfully takes property, and either sells it, or trades it away, or consumes it, there is no difficulty in applying the rule which permits a plaintiff to waive the tort, and sue on a contract implied by the law, for in such a case the defendant has taken the final step which makes the proof consistent with the allegation of a contract; Cooley on Torts, pp. 91–95; but when the evidence merely shows the property has been taken and wrongfully detained without any further act appropriating it, where is there room for saying either that the defendant intended to purchase it or that the law will imply the contract relation of a sale? In this case the defendant may well have thought that the deed was changed against him without his authority, and that he would, as he did, regain the possession of the stock of merchandise, so as to compel appellee to give him a warranty deed, as he believed himself entitled to, and by this means (wrongful it may be) he would force the consummation of the contract of March 9th. His act of conversion reached no further than wrongfully taking and detaining the property, intending to hold it for the rightful owner when he should comply with the terms of the contract, as perhaps wrongfully construed by appellant; that such wrongful taking and detention may be sufficient for the recovery of the same amount in damages by an action of trover or trespass may be admitted. But how does the evidence tend to show a contract relation, created either by the act of the parties or by the law? Before the action of assumpsit can take the place of an action of trover, it must be shown that there is some further act of appropriation than the mere wrongful taking and detention—acts which are sufficient to maintain trover or trespass for the full value of the property.

The law of the Circuit Court not being in harmony with the views herein expressed, and there being no evidence upon which an action *ex contractu* can be based, the judgment is reversed and the cause remanded.