## William Landis v. John M. Wolf, et al.

1. SUBROGATION—*who not volunteer.* One having a contract to purchase land, who is insisting upon its being carried out, is not a volunteer for the purpose of subrogation.

2. SUBROGATION—*who not owner of land for purpose of.* Where one who has contracted to purchase land redeems the same from an existing lien, he is not, for the purpose of subrogation, to be deemed the legal owner thereof merely because there has been offered to him a deed of such land which he did not, and was not bound to accept.

3. SUBROGATION—*who not owner of land for purposes of.* One who has contracted to purchase land and has redeemed the same from an existing lien, is not deemed the legal owner of the same for the purpose of subrogation where such contract has not been fully carried out.

4. SUBROGATION—*who entitled to.* A person who, in order to protect his own interests or rights in land, was compelled to pay an existing obligation against the same, is entitled to be subrogated to the rights of the creditor whose debt he paid.

Bill seeking subrogation. Appeal from the Circuit Court of Clay County; the Hon. WILLIAM M. FARMER, Judge, presiding. Heard in this court at the August term, 1904. Reversed and remanded with directions. Opinion filed March 17, 1905.

EDEN & MARTIN and E. J. MILLER, for appellant.

W. H. WHITAKER, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This suit was commenced by bill in chancery, filed by appellant against appellees, whereby appellant sought to subrogate himself to the rights of the mortgagee, in a mortgage given by appellees upon certain real estate in which

appellant claims an interest, said premises having been sold to the mortgagee at foreclosure sale and redeemed by appellant.

The facts as disclosed by the bill, cross-bill, answer thereto and the proofs in the case, are substantially as follows:  On March 9, 1901, appellant, Landis, owned a stock of goods in Sullivan, Illinois, and on that day agreed to trade the same to appellee, John M. Wolf, in exchange for Wolf's equity in a farm in Clay county, Illinois, and certain other considerations.  The conditions and terms of the trade were reduced to writing and were evidenced by two separate agreements, one signed by each of the parties, and which are set out in full in the case of Landis v. Wolf, 106 Ill. App. 533.  Appellant took possession of the farm, rented a part of the same and invoiced the stock and other personal property on the same, taken in the trade.  Arrangements were also made between the parties to said agreement concerning the $800 which was to be secured by a bankable note and on March 18 the parties proceeded to invoice the stock of goods, which they completed on the following Friday, the footing of the amounts and the invoicing of the fixtures still remaining to be done.  At that time appellant desired to leave town for a few days but Wolf insisted on the completion of the contract, and in the course of their conversation a dispute arose concerning the terms of the contract and as to whether Wolf was then entitled to possession of the stock of goods.  They thereupon consulted an attorney, showing him a warranty deed with the blanks filled in, but unsigned.  The attorney advised them that if Wolf would execute the deed and chattel mortgage provided for in the contract, he would be entitled to the possession of the stock of goods.  Appellant then told his clerk, Foster, upon the delivery of the deed by Wolf to him, to turn over the store keys and stock to Wolf and then left to take a train out of the city.  Upon his return a few days later Foster handed him a deed from Wolf, which he refused to accept on the ground that it was not the kind of a deed Wolf was to give him.  It

Landis v. Wolf.

was the same deed which had been produced in the attorney's office, but the word "warranty" wherever it occurred in the deed had been marked out and "quit-claim" inserted. Appellant then left the store and after taking legal advice returned and offered the deed to Wolf, telling him the deed was not the kind he was to have and that it did not properly describe the land. Wolf refused to take the deed back, a quarrel ensued and each ordered the other from the store. The result was that appellant left the store and commenced proceedings for specific performance of the contract. He also secured a temporary injunction against Wolf restraining him from interfering with said store or selling goods therefrom, and subsequently obtained an additional order commanding Wolf to turn over the keys of said store to him and restraining him from interfering with appellant in the conduct of his business at said store.

Upon the trial the bill in said suit was dismissed for want of equity and the temporary injunction dissolved and no appeal was taken from the decree. On April 5, 1901, Wolf sued out writs of attachment against appellant which were levied on the stock of goods and the land in question. A declaration in assumpsit with the common counts was filed and on the trial the judgment was given for Wolf. On appeal to this court it was held that under the evidence in the case, an action in assumpsit did not lie and the judgment was reversed and the cause remanded. Landis v. Wolf, *supra*. On the second trial of the attachment suit judgment was again given for Wolf, the same was reversed at the present term of this court and the cause again remanded. There was a mortgage on the Clay county farm which Wolf and his wife had given for $1,600, and, default having been made in the interest, the mortgagee, on July 2, 1901, commenced suit to foreclose the mortgage, making appellees and appellant defendants. A decree foreclosing the mortgage followed and by virtue thereof the land was sold on November 30, 1901, the mortgagee becoming the purchaser. On November 29, 1902, appellant re-

deemed said real estate from the foreclosure sale, paying the sum of $2,067.92, and took from the master in chancery a certificate of redemption, which he caused to be recorded in the proper records of Clay county. Appellant then filed the bill in this proceeding asking that he "be subrogated to all the rights of the mortgagee in said premises and of the purchaser of said real estate under said foreclosure sale;" that the land be conveyed to appellant or sold and the proceeds of said sale applied to the payment of the redemption money paid by appellant, together with interest and the costs of suit. The bill made appellees defendants, set out the facts substantially as above given and stated that by virtue of said contract of March 9, 1901, appellant had an interest in said real estate, but that he could not give a more specific account of said interest until the rights of the parties were fully determined by said suit then pending in this court.

Wolf filed an answer denying appellant's right to subrogation, and also a cross-bill, subsequently amended, setting out his version of the facts in the case, and asking for an accounting, and also for the specific performance of said contract and that if appellant could not specifically perform said contract that Wolf might have a lien on the farm for the consideration or purchase price set forth in the contract, and that said farm be sold to pay the same. Appellant answered the cross-bill and amended cross-bill. On hearing the court dismissed the original bill for want of equity. The cross-bill and amended cross-bill were also dismissed for want of equity, the court finding that the relief asked for therein was purely legal and that if the complainant therein was entitled to any relief, he must seek it in a court of law. The complainant in each bill prayed for and was allowed an appeal to this court, but Landis, complainant in the original bill, alone perfected his appeal.

Appellant contends that by virtue of the contract of March 9, 1901, he had such an interest in the real estate in question as to entitle him to pay off the mortgage upon

the same and become subrogated to the rights of the mort-gagee. Appellees on the contrary contend that appellant has no right of subrogation for the reason that if he was the owner of the land he paid off the mortgage for his own benefit and there is no reason why he should be subrogated to the rights of the purchaser at the foreclosure sale, from whom he had redeemed his own land; that if appellant was not the owner of the land and retained all the consid-eration which he was to give for the same, as appellees contend he did, then in redeeming the land he was a mere stranger or volunteer and not entitled to subrogation. The law is well settled that a mere stranger or volunteer cannot, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor. Bennett v. Chandler, 199 Ill. 97; Hough v. Aetna Life Ins. Co., 57 Ill. 318. By the contract en-tered into with Wolf, appellant obtained a certain right to or interest in the mortgaged premises. That neither ap-pellant nor Wolf have any intention of abandoning the con-tract is evidenced by the fact that when the controversy concerning the trade arose, appellant filed a bill for spe-cific performance of the contract, and Wolf, by his amended cross-bill in this case, also asked for a specific performance of the same. As the contract has been carried out to some extent by both parties thereto, and as both are insisting upon the full completion of the terms of the same, although differing as to what those terms are, it is immaterial, so far as this case is concerned, whether appellant has fully complied with all the terms of the contract in the manner in which Wolf claims he should. Whatever may be the result of the controversy between them, appellant cannot rightly be deemed to have been acting as a stranger or volunteer at the time he made the redemption. Appellee contends, however, that by virtue of the deed left by Wolf with Foster and by the latter presented to appellant, the title to the land in question vested in appellant and that it necessarily follows that the interest appellant had in the land was that of owner, and having redeemed his own land

he cannot be subrogated to the rights of the mortgagee or purchaser at the foreclosure sale. In the deed presented by Foster to appellant, one of the tracts of land was described as "five acres off the side of the n. w. $\frac{1}{4}$ of s. e. $\frac{1}{4}$ section 25." This was of course an imperfect description and from it it would be impossible to locate the land. One of the reasons given by appellant to Wolf for refusing to accept the deed when the controversy arose between them was that it did not properly describe the land. Wolf claims that the five-acre tract above named was improperly included in the deed and that the deed contained a proper description of all the land intended to be conveyed. If this tract was intended by the contract to be included, appellant was not compelled to accept the deed tendered to him, on account of the failure to describe the land properly, and there was therefore no legal delivery of the deed to him. In such case he could not be considered the legal owner of the land and his interests in the same were such as accrued to him from the contract alone. The contract gave him an interest in the premises, which he could enforce by complying with the terms thereof, and therefore if the deed was never delivered to him appellant would have had a right to redeem the premises from the sale to protect his interest and to be subrogated to the right of the mortgagee and purchaser at the mortgage sale.

But regardless of the question whether there was a misdescription in the premises or not, we are of opinion that appellant was entitled to subrogation. The terms of the contract between appellant and Wolf have never been fully complied with and confusion and controversy has existed concerning their affairs from a very short time after the contract was entered into. Appellant has taken possession of a part if not all of the farm premises and personal property named in the contract, has refused to accept the deed tendered on the ground that it is not the kind of a deed provided for and does not correctly describe the property, but he has not yet received the bankable note and note secured by chattel mortgage therein mentioned. On the other

Landis v. Wolf.

hand Wolf is not in possession of the stock of goods for which he traded. Almost immediately after the first controversy arose appellant commenced his suit for specific performance and shortly afterwards Wolf commenced suit against appellant by attachment. During the pendency of these suits, the holder of the mortgage brought suit to foreclose the same and the land was subsequently sold at foreclosure sale. Neither party took any steps to redeem the premises until a year had nearly elapsed, when they were redeemed by appellant. Had the redemption not been made the land would have been lost to appellant and appellees alike.

It appears to us that under these circumstances appellant was compelled to pay the debt in order to protect his own interests or rights in the land under the contract and in such case the law is that he is entitled to subrogation to the rights of the creditor whose debt he paid. Sheldon on Subrogation, (2d ed.) section 12; Bennett v. Chandler, *supra;* Home Savings Bank v. Bierstadt, 168 Ill. 618. In the case last cited it is said that the doctrine of subrogation has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons and is enforced solely for the accomplishment of substantial justice.

The opinion in Hazle v. Bondy, 173 Ill. 302, quotes, in support of the position taken by the court upon the subject of subrogation, the statement made in 24 Am. & Eng. Enc. of Law, 253, that, "One of the most familiar instances of the application of the doctrine of subrogation is where the purchaser of incumbered property, without having assumed the incumbrance, pays it off in order to protect his own interest or to perfect his own title. In such cases it is uniformly held that he is entitled to be subrogated to the position of the incumbrancer in respect of all the latter's securities, rights, remedies and priorities." This interpretation of the law in regard to subrogation is particularly applicable to the case before us. It appears to us that the

equities of this case are clearly with appellant and that he is entitled to the relief prayed for in his bill.

The decree will be reversed and the cause remanded with instructions to the court below to enter a decree in accordance with the views herein expressed.

*Reversed and remanded with directions.*