### INTERSTATE COAL CO. v. LOG MOUNTAIN COAL CO., Inc.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1921.)

No. 3463.

Brokers ⟨⇒56(3)—Entitled to commission on sales direct to customer procured by him.

Defendant, as a broker, under authority from plaintiff, made a contract to furnish a customer with a stated number of cars per day of coal produced by plaintiff, until further notice, and during performance of such contract, with plaintiff's knowledge, was negotiating with the customer for a contract for a fixed term and delivery of an additional quantity, when plaintiff itself made such contract direct with the customer on the same terms and at the same price. *Held*, that defendant was entitled to its agreed commission on the coal delivered under such contract.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Action by the Log Mountain Coal Company, Incorporated, against the Interstate Coal Company. Judgment for plaintiff, and defendant brings error. Reversed conditionally.

C. E. Blanchard, of Columbus, Ohio, for plaintiff in error.

Herbert Jackson, of Cincinnati, Ohio (Wilson & Rector, of Columbus, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The Log Mountain Company (hereafter called plaintiff) was an operator, mining coal in Kentucky; the Interstate Company (hereafter called defendant) was a coal broker, or wholesaler, selling from Columbus, Ohio. An arrangement was made by which the defendant was to handle Log Mountain Company coal upon a fixed commission per ton. The defendant took orders, which were forwarded to the plaintiff, and shipped by it, sometimes directly to the consumer, sometimes to the defendant. The selling price was collected by the defendant company, and, less commissions, was remitted monthly to the plaintiff. The latter charged all the shipments on its books to the defendant. At a time when there was a considerable balance accrued from the defendant, a controversy arose as to the plaintiff's right to sell directly to the defendant's customers, and the defendant refused to pay this balance. The plaintiff brought this suit, alleging that the defendant was a del credere factor, and thus personally liable. The defendant answered, admitting the indebtedness (except for a set-off allowed to it in the judgment below), but alleging that it had accrued as between vendor and purchaser, and claiming that there had been a contract whereby it had the sole right to buy and sell this coal for certain territory, that the plaintiff had broken this contract, and that damages had arisen to defendant more than sufficient to exhaust plaintiff's demand. It therefore asked judgment against the plaintiff for the balance.

A jury was waived, and the court found the facts and law specifically. The conclusions were that the relation between the parties. was that of principal and agent, and not vendor and purchaser; that the alleged contract for exclusive territory did not exist; and that, therefore, the plaintiff should have judgment for the amount claimed, less a small cross-item allowed. The defendant below brings error, and says that the facts found lead to the conclusion, as one of law, that the relation was that of vendor and purchaser, and insists, also, that defendant's main cross-damages sufficiently appear.

There was no written contract. The true relations of the parties depend, largely, on inferences to be drawn from the course of business. Certain things point very strongly to the conclusion that the coal was sold by the plaintiff to defendant, and we think some of the stated findings of fact supporting the contrary result are really findings of law, and so cannot be accepted as indisputable. The case, on this issue, is—at best for the plaintiff—a very close one, as is emphasized

by the fact that the trial judge reached and announced one conclusion, but, before completing the findings, became satisfied that the weight of inference was the other way. We do not find it necessary to decide this issue. The only judgment asked or rendered was a money judgment. The defendant confessed that it owed the money and had no defense, except its counterclaim and its contention that the petition was drawn upon an erroneous theory. We think no legal prejudice inheres in the judgment against defendant, because its admitted liability may have been for another reason than the one alleged. The only suggestion of harm is that the judgment fixes upon defendant a wrongful conversion of plaintiff's money. If this could, in any case, be so prejudicial as to require reversal, it is not here, because of the result which we later reach upon the counterclaim.

The trial court's conclusion of fact that there was no contract for exclusive territory is supported by substantial evidence; the burden was on defendant to establish this claim, and its evidence is plainly not compelling.

One of the customers found by defendant was located in Detroit, and was a large user of coal. It was supplied by defendant with some of plaintiff's coal for test. The test proved satisfactory, and it thereupon made a contract with defendant that it would take five cars of this coal per day, continuously, "until further notice." The negotiations between this customer and defendant contemplated (with plaintiff's knowledge and approval) the making of a binding contract for a year, and for a larger quantity per day. At this stage the Detroit customer, learning where the coal came from, went directly to plaintiff and made a binding contract for shipments during the remainder of the year (about eight months), to December 31st, at the same price which the customer was paying the defendant. The plaintiff thereby saved the commission which it had agreed to pay defendant upon its sales. In considering this counterclaim, defendant must now be considered a broker; plaintiff cannot be heard to deny that status. As a broker, it was entitled to its commission on the sales which it made, or which were made by its principal, to the customer which it had procured. Dotson v. Milliken, 209 U. S. 237, 243, 28 Sup. Ct. 489, 52 L. Ed. 768; Cleveland-Cliffs Co. v. Gamble, 201 Fed. 329, 119 C. C. A. 567; Robinson v. Parham (C. C. A. 6) 257 Fed. 544, 545, 168 C. C. A. 527; Mechem on Agency, §§ 2431, 2435; R. C. L. tit. Brokers, §§ 49, 58. If plaintiff obtained the order by some such change in contemplated terms or conditions as to indicate that the defendant might not have made the sale which plaintiff did make, the burden was on plaintiff to show this fact, and it was not shown. When the principal accepts a customer procured by the broker, he must pay commissions, even though the accepted terms were somewhat variant from those given to the broker. R. C. L. tit. Brokers, § 52, note 12.

Cases like Holton v. Job (C. C. A. 6) 204 Fed. 947, 123 C. C. A. 269, depend upon a special contract that the commission is payable only when the broker carries it through to the end; they do not reach the typical relationship and the contract which the law implies therefrom. While it is true that the contract which defendant had made with

the customer continued at the latter's will, yet it was in full force, and was being daily carried out, when plaintiff stepped in and took over for itself both the existing sales and their planned expansion and continuation. This is a sufficient tie to attach defendant's rights to those sales which were made under the contract which plaintiff entered into with the customer while the broker's contract was still in force (see cases cited above); but the commissions do not reach to sales made by plaintiff to the same customer after the expiration of such contract. Such further sales under these findings must be considered as pursuant to a new contract made between plaintiff and the customer after defendant's agency had ceased. The defendant's counterclaim, therefore, should have been allowed as to the sales made to this customer up to December 31, 1917.

Since the refusal of the defendant to make payment upon the account was upon the express ground that plaintiff had interfered with this Detroit sale and was depriving defendant of its rightful profits, there could be no wrongful conversion of plaintiff's money merely by this refusal, and it does not appear that any demand for the sum rightly due was ever made.

The plaintiff claims it was justified in dropping defendant, because plaintiff had been deceived in two particulars: First, as to defendant's solvency; and, second, as to the existence of the Detroit contract. Neither of these grounds is alleged in the reply to the counterclaim; but, aside from that, insolvent agents are often permitted to collect the principal's money, and there is no finding that there was any material misrepresentation in this respect. Defendant did represent to plaintiff that the contract with the Detroit customer was closed for a definite time and amount, while, in fact, the negotiations were not closed, and if plaintiff had relied upon this, and damages had resulted, defendant might have been liable, or the misrepresentation might have supported the termination of further relations with defendant, if there had been a continuing contract between them; but we do not see how it justified plaintiff in refusing to pay commissions arising under the facts here existing.

The record does not indicate the amount of commissions to which we think the findings show defendant entitled, since the amount of sales shown by the record to have been made to the Detroit customer includes an unknown sum for sales after December 31st. If, within 30 days, the parties can agree upon the sum which should be remitted from the judgment on this account, and file in this court certified copies showing that such remittitur has been made in the court below, the judgment, as so modified, will be affirmed, but with costs against the defendant in error. In the absence of such showing, the judgment will be reversed, with costs, and the case will be remanded for new trial.