## SLOAT-DARRAGH CO. v. GENERAL COAL CO.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3558.

1. **Sales ⬦53(1)—Whether defendant ordered shipments of coal as purchaser or as agent for seller held question for jury.**

   Whether in a sale of 100 cars of coal, delivered on defendant's written order to a third party, defendant was the purchaser and liable for the price or acted as agent for the seller, the price stated in the order being "less 10c commission to us," *held* a question for the jury in view of the fact that, as requested in the order, the invoices were sent to defendant, and the coal charged to its account, and that it sent its check in payment for the first month's shipments, on which, however, it stopped payment on the bankruptcy of the company to which the coal was delivered.

2. **Evidence ⬦459(2)—Evidence held admissible on question of construction of contract.**

   On an issue as to whether defendant was the purchaser or acted as agent for the seller in a sale of coal delivered to a third party, a written order for the coal given by such third party to defendant, which was stamped as received and retained by defendant, *held* competent evidence.

3. **Subrogation ⬦7(1), 41(4)—Guarantor paying debt of another may maintain action at law thereon.**

   Where plaintiff for a valuable consideration guaranteed the accounts of a coal company, and under such guaranty paid an account against defendant, it was subrogated to the right of the company to maintain an action at law to recover the account, which action it might bring in its own name, without joining the original creditor, where under the laws of the state an action is required to be brought in the name of the real party in interest.

4. **Trial ⬦59(2)—Order of proof is within discretion of court.**

   The order of proof is within the judicial discretion of the trial judge.

In Error to the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Action at law by the General Coal Company against the Sloat-Darragh Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harry E. Marble and Guy W. Mallon, both of Cincinnati, Ohio (Mallon & Vordenberg, of Cincinnati, Ohio, and E. A. Belden, of Hamilton, Ohio, on the brief), for plaintiff in error.

Connor Hall, of Huntington, W. Va., for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error (hereinafter called plaintiff) was engaged at Huntington, W. Va., in buying and selling coal. Plaintiff in error (whom we shall call defendant) was a jobber of coal at Hamilton, Ohio. Plaintiff sued for the purchase price of 100 cars of coal alleged to have been sold to defendant by the Carbon Hills Collieries Company, a producer of coal at Huntington; plaintiff basing its right of recovery upon subrogation by virtue of an alleged payment by it of the indebtedness from defendant to the Collieries Company for the purchase price of the coal, in pursuance of an alleged assumption and guaranty by plaintiff of the payment and collection of defendant's indebtedness to the Collieries Company. The meritorious defense presented was that defendant was not the purchaser of the coal, but was merely the Collieries Company's agent in a sale thereof to the Hamilton-Otto Coke Company of Hamilton, Ohio, which defendant asserts was the Collieries Company's actual debtor. Plaintiff's succession to the Collieries Company's asserted original right of recovery is also challenged. A motion to direct verdict for defendant was overruled, and the case submitted to the jury under a charge which is not in the record, nor made the subject of criticism; the grounds of the motion to direct being lack of evidence not only of defendant's agreement to purchase, and of the existence of a cause of action on the theory of subrogation, but also of plaintiff's alleged payment for the coal prior to the beginning of suit; also variance between the petition and proofs as to the purchase price of the coal. A motion for new trial was overruled. This review involves also certain subsidiary questions, which will appear in the course of the opinion.

[1] 1. Confirming a telephone conversation had on the previous evening between defendant and the Collieries Company's representative, the former, on January 14, 1919, sent by mail to the Collieries Company its order No. 564, upon a form partly typewritten and partly printed, for the shipment by the Collieries Company to the Hamilton-Otto Company of—

"100 cars r. o. m. [run of mine] at $2.15 per ton f. o. b. mines. Start shipment January 20th. Three cars daily. Shipping notices to us promptly. Above price less 10c commission to us. *Please acknowledge receipt of this order. Mail all papers and charge account of Sloat-Darragh Company, Hamilton, O.*"

The words we have italicized were printed; substantially all the remaining words we have quoted were typewritten. This order was inclosed in a letter from an officer of the defendant to the manager of the Collieries Company, containing among other things, this statement:

"Please find inclosed herewith our formal order No. 564 at the special price agreed upon, and, while you are at liberty to invoice direct upon the consignee, yet we believe we could get better service all around if you mail invoices

to us. I will leave this matter optional with you, but would like you to advise us which you expect to do as soon as possible."

Plaintiff, which was then the selling agent of the Collieries Company, on January 16th acknowledged to defendant its "order for 100 cars of Eagle gas coal for the Hamilton-Otto Coke Company," the letter of acknowledgment containing this statement:

"We have instructed the C. and O. people to mail you promptly postal notices and our office will render you the invoices as per your suggestion, which is absolutely in line with our ideas."

The following acknowledgment was appended to plaintiff's letter:

"We thank you for your order No. 564 for 100 cars Eagle gas coal to be shipped at rate of three per day to the Hamilton-Otto Coke Company, * * * price $2.15 f. o. b. mines, less 10 cents per ton commission to you."

On January 20th the Hamilton-Otto Company gave to defendant its written order for shipment to its address "mailing memo. bill and bill lading the day of shipment, and regular invoice in duplicate as promptly as possible" of "three cars per day of Eagle coal from Carbon Hill Collieries Company, Logan Co., W. Va., to be r. o. m. at $2.15 per ton f. o. b. mines. * * * This order not to exceed 100 cars." The coal was consigned by the Collieries Company to the Hamilton-Otto Company, and invoices were made out against and mailed to defendant covering the various shipments. The evidence tends to show that the billing was at $2.05 per ton. On February 21st, in reply to plaintiff's inquiry whether check for the January account had been mailed, defendant inclosed its check for $3,615.49 "covering the January shipments, as per your invoices," at the same time advising plaintiff of the receipt of its telegraphic inquiry and of the fact that the check was mailed. Later, and on the evening of that day, bankruptcy proceedings were instituted against the Hamilton-Otto Company. Defendant thereupon stopped payment of its check. There was other testimony, both written and oral, addressed to the merits of the controversy. It is not fairly open to question that there was sufficient evidence to justify submitting the contention that defendant, and not the Hamilton-Otto Company, was the real purchaser of the coal and was the Collieries Company's actual debtor, provided oral testimony of the agreement was properly admitted, against defendant's insistence that the written order of January 14th, and its acceptance of January 16th, clearly and unambiguously showed that defendant acted merely as agent for the Collieries Company in the sale of the coal to the Hamilton-Otto Company.

Without conceding that, in considering the admissibility of oral testimony, we are limited to the written order and its acceptance, and may not look to defendant's letter accompanying its order, we are of opinion that the order and acceptance, taken together, do not clearly and unambiguously show a contract of agency only.[1] Neither "principal" nor "agent" is mentioned. The two writings will be searched in

---

[1] It is immaterial to the conclusion reached whether or not defendant's letter accompanying its order is considered part of the original contract.

vain for language clearly and unmistakably indicating a mere agency contract. The order is headed "The Sloat-Darragh Coal Company [followed by address]. Order No. 564." It is stamped "United States Fuel Administration License No. X–01709." Plaintiff's formal acknowledgment relates to *"Your order*[2] No. 564 for 100 cars," etc. Defendant's order requests not only that shipping notices be sent to it, but that the account for the coal *be charged to defendant.* Plaintiff's letter of acknowledgment not only advises of the instruction to mail defendant the postal notices, but also, in inferable meaning, that the invoices will be charged to defendant. It is true that in case of conflict between written and printed provisions of a contract those in writing will control. Bank v. Insurance Co., 83 Ohio St. 309, 330, 94 N. E. 834. But there is here no irreconcilable conflict between the printed request to charge to defendant and the remaining provisions of the contract. Plaintiff's letter of acknowledgment is open to construction as an acceptance of and agreement to the printed direction to charge to defendant. It is also true that the word "commission" has a natural tendency to suggest an agency contract, as being compensation for services rendered; but that is not its sole meaning. The fuel administrator's rules, with which defendant was familiar, treat the words "profits" and "commissions" interchangeably as indicating the advance which may be charged upon resale of coal. In view of defendant's familiarity with the Fuel Administrator's rules and instructions, it was not error to permit reference thereto. But, even had the word "commission" been a misnomer, it was not enough of itself "to convert into an agency what was in fact a sale." The contract must be construed as a whole. Kelley v. Sibley (C. C. A. 7) 137 Fed. 586, 591, 69 C. C. A. 674. Moreover, even an agency would not be necessarily inconsistent with defendant's personal liability to pay for the invoices. Gable v. Vonnegut Co. (C. C. A. 6) 274 Fed. 66. And see in this connection Interstate Co. v. Log Mountain Co. (C. C. A. 6) 271 Fed. 76, 78. It is also true that in a previous sale by the collieries Company to the Hamilton-Otto Company defendant acted merely as the seller's agent; but, if that fact is to be considered in interpreting the contract before us, as being part of the circumstances under which the contract was made, it is significant that under the former agency relation the invoices were not charged to defendant, but to the Hamilton-Otto Company; and in considering the written contract we may properly look to the contemporaneous construction placed upon it by the parties, as evidenced by the written order given by the Hamilton-Otto Company to defendant, as well as by the initial payment by defendant of the January invoices, which failed of completeness only as before stated.

[2] The Hamilton-Otto Company's order given defendant was not incompetent as a mere assertion of a third party. Defendant received it, stamped it as received January 21, 1919, and (according to the evidence) retained it until and upon the first trial of this case. The written contract not being clearly and unambiguously a contract of

---

[2] All italics in this opinion are ours, unless otherwise indicated.

agency, it is enough to say that there was oral testimony tending to show an actual sale, as well as testimony tending to show the contrary. It scarcely need be said that on this motion for directed verdict the testimony must be construed in its aspect most favorable to plaintiff. It is enough that there was substantial testimony tending to sustain plaintiff's contention in this respect. The verdict must be treated as finding that defendant was the original debtor of the Collieries Company.

[3] 2. The denial of plaintiff's alleged succession to and right of recovery of defendant's original debt to the Collieries Company rests upon the contention that plaintiff was a stranger to the debt at its inception; that it never became liable for it by reason of any relation which it bore to defendant, but remained a stranger until it voluntarily assumed to pay the debt; that the payment of the debt did not ipso facto effect subrogation, but merely gave a right thereto which could be enforced only by action in equity and to which the Collieries Company would be a necessary party; and, further, that there was not sufficient payment by plaintiff to give right of subrogation.

We cannot agree with this contention. There was evidence that plaintiff, for a valuable consideration from the Collieries Company, guaranteed its accounts for January, 1919, and thereafter, thus including the debt in question. Defendant treats this as a claimed assumption and guaranty of payment and collection of the account. We may safely accept that construction.

As was said by the District Judge in overruling a demurrer to the petition:

"The right of subrogation arises whenever one, under compulsion or to protect his property interests, pays a debt which ought in equity and good conscience, to be paid by another." [3]

A prominent illustration is found in the general rule, applicable not only to fire, marine, accident, and casualty insurance, but to indemnity contracts of all kinds, that the indemnifier, on paying to the indemnified the amount of the loss on the property involved, is subrogated in a corresponding amount to the indemnified's right of action against any other person responsible for the loss. Hall v. Railroad Companies, 80 U. S. (13 Wall.) 367, 371, 20 L. Ed. 594 (insurance against fire); Travelers' Ins. Co. v. Gt. Lakes, etc., Co. (C. C. A. 6) 184 Fed. 426, 429, 107 C. C. A. 20, 36 L. R. A. (N. S.) 60 (casualty insurance); United States v. Fidelity & Guaranty Co. (C. C. A. 6) 247 Fed. 16, 20 [1] (fidelity insurance); U. S. Fidelity, etc., Co. v. Union Bank, etc. (C. C. A. 6) 228 Fed. 448, 452, 143 C. C. A. 30 (bond of public official); U. S. Casualty Co. v. Bagley, 129 Mich. 70, 87 N. W. 1044, 55 L. R.

---

[3] The broad rule is thus stated in Pomeroy's Eq. Jurisp. (2d Ed.) § 2345: "Whenever a party discharges an obligation in performance of a legal duty— that is, an obligation for the performance of which he was legally bound— but for which his liability was subsequent to that of another party, he is entitled to be subrogated to, and to have the benefit of, all rights of the creditor and all securities which may at any time have been put into the creditor's hands by a party whose liability is prior to his own, or which the creditor may have obtained from such party."

[1] 159 C. C. A. 234.

A. 616, 95 Am. St. Rep. 424 (insurance of manufacturer against leakage of water). It is not material whether the principal obligation arises ex contractu or ex delicto. Pomeroy's Eq. Jurisp., supra, § 2345, p. 5187. It is true that a voluntary payment of a debt by one who is a stranger thereto gives no right of subrogation (Bank v. Craig, 63 Ohio St. 374, 59 N. E. 102, 52 L. R. A. 872, 81 Am. St. Rep. 639; Bennett v. Chandler, 199 Ill. 97, 64 N. E. 1052); but it was not essential to plaintiff's recovery that defendant be a party to the contract of guaranty (Pomeroy's Eq. Jurisp., supra, § 2345), for the right of subrogation does not rest on contract or privity between defendant and the subrogee; it arises out of the nature of the contract as one of indemnity (St. Louis, etc., Ry. Co. v. Insurance Co., 139 U. S. 223, 235, 11 Sup. Ct. 554, 35 L. Ed. 154). Nor was an assignment from the Collieries Company to the plaintiff of the former's indebtedness against defendant, or even an agreement that plaintiff should be subrogated to the right of the Collieries Company, necessary to right of action. Federal Ins. Co. v. Detroit Ins. Co. (C. C. A. 6) 202 Fed. 648, 651, 652, 121 C. C. A. 58. Plaintiff was not a stranger to the debt at the time it made the payment; by virtue of its contract it had assumed and guaranteed the payment and collection of the indebtedness in question.[4] Nor was it necessary in this case that suit be had in equity. No relief was asked by way of compelling delivery of securities or other equitable remedy. The right to which plaintiff was subrogated was merely to collect the indebtedness from defendant to the Collieries Company. By the now generally recognized rule, plaintiff had the right to sue at law, and, although at the common law the suit would have been in the name of the Collieries Company for the use and benefit of plaintiff, yet as, in Ohio, the party in interest is allowed to recover in his own name (G. C. § 11241), plaintiff had the right to sue in its own name, and without joining the Collieries Company as a party. Albany, etc., Co. v. Lundberg, 121 U. S. 451, 454, 7 Sup. Ct. 958, 30 L. Ed. 982; Gt. Lakes Eng. Co. Case, supra, 184 Fed. 432, 107 C. C. A. 20, 36 L. R. A. (N. S.) 60; Turk v. Railway Co. (C. C. A. 6) 218 Fed. 315, 317, 134 C. C. A. 111. The testimony of plaintiff's manager tended to show payment in full by plaintiff to the Collieries Company previous to the commencement of suit. A discussion of the evidence upon that subject would not be helpful. It is enough to say that, if the jury believed the testimony of this witness, it was justified in finding such antecedent payment.

[4] 3. The remaining criticisms call for little discussion: (a) The objection that plaintiff was allowed to introduce in evidence its acknowledgment of the receipt from defendant of the order for the coal,

---

[4] There is nothing to the contrary of this principle in Barber Asphalt Pav. Co. v. Traction Co. (C. C. A. 6) 202 Fed. 817, 121 C. C. A. 125, where it was held that a guaranty by the paving company to the city to keep the pavement in good repair for a given period was not a contract of indemnity, imposing a secondary liability only on the paving company, so as to entitle it, on being compelled to pay for repairs to the pavement, to subrogation to the city's right of recovery against the traction company for so constructing its road as to cause the defects in the pavement.

as well as of the letter inclosing that order, without first introducing defendant's letter transmitting the order, is answered by the consideration that the order of proof is necessarily within the judicial discretion of the trial judge, that the order had already been introduced, and that defendant's letter accompanying it was later introduced by defendant. The jury thus had the benefit of defendant's letter in finally determining the effect of plaintiff's letter of acknowledgment, and prejudicial error cannot be predicated because of apprehension that the jury had meanwhile obtained a wrong impression. (b) It is said by defendant's counsel that, after the motion for new trial was argued and submitted, the trial judge announced that he would overrule the motion upon the filing of a receipt from the Collieries Company, made at the time of payment, showing that the debt had been paid by plaintiff for the coal involved; that later, without notice to defendant, an affidavit of the Collieries Company's president was filed, and the motion for new trial overruled. The affidavit is criticized as failing to show when the coal was paid for, or that payment had been made before commencement of suit.[5] In this there was no reversible error. The motion for new trial was addressed to the sound discretion of the court, and is not reviewable here. If the trial judge saw fit, for his own satisfaction, to require such proof of receipt, conformity to this requirement was not essential to the right to refuse new trial. It is to be presumed that the judge was satisfied with the showing. As already said, plaintiff's testimony tended to show the fact of such timely payment. (c) The asserted variance between the petition and the proofs, in that the former states the purchase price of the coal as $2.05 per ton, while, as defendant asserts, the contract price was $2.15 per ton, with 10 cents commission to defendant, is disposed of by what is said in the first paragraph of this opinion. (d) The question of weight of evidence was addressed only to the trial court. We cannot consider it. (e) Upon redirect examination of the defendant's only witness counsel offered to introduce a letter and four telegrams, stated by counsel to have been mislaid, whereby defendant was prevented from offering them in chief. The offered exhibits were rejected without statement of reason for that action, which can be reviewed only in case of abuse of discretion. The record does not indicate such abuse. In the first proffered exhibit, which antedates defendant's repudiation of liability, plaintiff agreed to pay demurrage charges on coal accumulated in the Hamilton-Otto Company's yards, due to the fact that plaintiff's shipments were made more rapidly than called for. The four other proffered exhibits were telegrams ranging from six to nine days after the Hamilton-Otto Company's bankruptcy, relating to demurrage on cars received by that company thereafter, resulting in its taking the same and paying demurrage thereon. The pertinency of these several exhibits, if any, is very remote. We see no necessary inconsistency between plaintiff's attitude as shown by these proffered exhibits and its construction of the contract in question as one of sale to defendant. Whoever was the pur-

---

[5] The judge's announcement was apparently oral. It is not in the record, and counsel seem to disagree as to what it was.

chaser, plaintiff was interested in the subject of demurrage and in getting the cars accepted.

In our opinion the case was properly submitted to the jury, and without prejudicial error. The judgment of the District Court is affirmed.