## LUCKENBACH v. PEDRICK.

United States District Court
S. D. New York.
Sept. 18, 1953.

Gainsburg, Gottlieb, Levitan & Cole, New York City, Milton Levitan & Walter P. Arenwald, New York City, of counsel, for plaintiff.

J. Edward Lumbard, U. S. Atty. So. Dist. N. Y., James A. Devlin, Asst. U. S. Atty., New York City, of counsel, for defendant.

RYAN, District Judge.

On March 22, 1949 plaintiff instituted this suit against the Collector of Internal Revenue for the Second District of New York to recover $14,082.87 with interest, income taxes she alleges were erroneously collected from her for the calendar years 1942 through 1946. Subsequent to the filing of the complaint the defendant died and his executrix was substituted. The suit was timely filed under the provisions of Section 3772(a) (2), Title 26; plaintiff previously duly filed claims for refund; the claims filed for 1942 and 1943 have been disallowed; the claims for 1944, 1945 and 1946 have neither been allowed nor rejected.

The issue as formulated by the pre-trial order of November 17, 1952 (P's Ex. 1–A) is whether certain income which plaintiff received constitutes alimony and is therefore taxable to her under Sec. 22(k), I.R.C. The answer depends upon the construction to be given an agreement executed on July 23, 1930, between plaintiff wife and Edgar F. Luckenbach, the father of her former husband, under which these moneys were paid to her. (P's Ex. 2.) By amendment at trial, the pre-trial order raises in the alternative the further issue of whether these payments are taxable under Section 22(a), I.R.C.

The events surrounding the making of this agreement have been stipulated and are incorporated in the findings now made. The testimony of a single witness, Raymond E. Stefferson, an attorney, called by defendant, who represented Edgar F. Luckenbach at the time of the making of the agreement, was received and decision was reserved on objection as to competence and relevance. Although I find no ambiguity in the agreement of July 23, 1930 between plaintiff and her husband's father, I overrule the objection and receive this testimony for such light as it may shed upon the purpose the parties intended this instrument to serve.

Plaintiff was married on November 6, 1916 to Lewis Luckenbach; a boy, the issue of the marriage, was born on June 6, 1920. In January 1930 plaintiff filed suit for divorce in the New York Supreme Court; service was made upon the husband by publication as he was then

without the state. On January 27, 1930, plaintiff was duly appointed in this divorce suit as receiver in sequestration of the real and personal property of her husband. New York Civil Practice Act, Sec. 1171–a. She took possession of certain valuable property consisting of land, a house and furnishings at Sands Point, Long Island, known as the Fraser Estate, where she and her husband had resided, and of furniture located in an apartment in New York City which had been occupied by her husband. Plaintiff, as receiver, then placed in storage the furniture and other household effects contained in the house and in the apartment.

Edgar F. Luckenbach, plaintiff's husband's father, claimed ownership of this real and personal property on Long Island by himself, individually, and by various corporations which he controlled. On March 11, 1930 Edgar F. Luckenbach moved in the sequestration proceedings to compel plaintiff to turn back to him, as owner, all the personal property which she, as receiver, had seized at the Sands Point premises. This motion was denied. Thereafter, he brought an action in replevin for recovery of this personal property as well as for that which had been removed from the city apartment against the warehouse company. In this action he joined plaintiff as receiver in sequestration as a party defendant. On July 23, 1930, the date of the making of the agreement here involved, this action was pending. On May 7, 1930, Luckenbach Terminals, Inc., a corporation controlled by Edgar F. Luckenbach, claiming to be the fee owner of the Sands Point realty moved for the return and surrender to it by plaintiff of these premises. This motion was also denied. It appears that in her affidavit submitted in opposition to this motion, plaintiff stated that she believed "that the said real property, as well as the contents thereof, belong to the defendant (her husband) and to me." (P's Ex. 17.)

Following this, plaintiff moved to punish Edgar F. Luckenbach and Luckenbach Terminals, Inc., for contempt of the order of sequestration, which authorized her to occupy the Sands Point property, because of its occupancy by Edgar F. Luckenbach and his family. This motion was pending on July 23, 1930.

Plaintiff, as receiver, also commenced an examination of Edgar F. Luckenbach as president of various companies controlled by him, concerning property and moneys of the estate of Lewis Luckenbach, the deceased paternal grandfather of her husband, in which estate she maintained her husband had an interest. In addition, she had begun a lengthy examination of Edgar F. Luckenbach, individually, concerning property of her husband held by Edgar F. Luckenbach both individually and as trustee under the last will of Lewis Luckenbach, Sr., the deceased grandfather. All of these examinations were pending on July 23, 1930, when this bitter family litigation was brought to an end by a series of negotiations between the attorneys for plaintiff and Edgar F. Luckenbach which culminated in the making of instruments which the parties called the "Agreement of Separation" (P's Ex. 1) and the "Agreement of Guarantee" (P's Ex. 2).

The "Agreement of Separation" dated July 23, 1930, was entered into between plaintiff and her husband Lewis Luckenbach to provide for the support and maintenance of plaintiff and her son; simultaneously therewith, plaintiff and Edgar F. Luckenbach executed the "Agreement of Guarantee". The terms of these will be considered later. On the same day, a stipulation was signed by plaintiff and her husband terminating the sequestration and contempt proceedings and the examination of Edgar F. Luckenbach in his various capacities, but in no other way affecting the pending divorce action. (P's Ex. 4.) At this time, plaintiff, as receiver and individually, also executed a general release to Edgar F. Luckenbach, individually and as trustee of the will of Lewis Luckenbach, Sr., deceased (P's Ex. 5), and a release, individually and as receiver, to the various companies controlled by Edgar F. Luck-

enbach (P's Ex. 6). The transcript of the examinations of Edgar F. Luckenbach was surrendered to his attorneys.

On December 8, 1930, a decree of divorce approving and incorporating the "Agreement of Separation" was granted plaintiff by the Supreme Court of New York. The decree made no reference to the "Agreement of Guarantee"; all proceedings against Edgar F. Luckenbach had been terminated; he was in no way a party to the divorce action or to any ancillary proceedings then pending.

Although the "Agreement of Guarantee" was by its terms not to become enforcible until July 19, 1933—the date of the expiration of bonds guaranteeing performance by the husband of the terms of the "Agreement of Separation"— monthly payments to plaintiff under the "Guarantee" commenced to be made by Edgar F. Luckenbach in August 1930. From that date until April 26, 1943, when Edgar F. Luckenbach died, payments to plaintiff under this "guarantee" were made either directly by Edgar F. Luckenbach or through the medium of the Luckenbach Steamship Co., Inc. Up to December 31, 1936 such payments as were made directly to plaintiff by company check were charged on the company books to the account of Edgar F. Luckenbach. However, beginning with January 1937 and up to the time of his death all payments were made by company check drawn to the order of Edgar F. Luckenbach and endorsed by him to plaintiff; these payments were charged on the company books to an account entitled "Lewis Luckenbach Loan Account." Subsequent to April 26, 1943 and through December 31, 1946 (the last date which concerns us) payment was made by check of the Luckenbach Steamship Company drawn to the order of plaintiff, at the direction of the executor of the estate of Edgar F. Luckenbach and charged to the "Lewis Luckenbach Loan Account." (P's Ex. 10.) A specimen of the letters signed by the Treasurer of the Steamship Company covering the remittance of these checks states that these amounts are "to make the above payments to you of alimony as heretofore arranged." (P's Ex. 9–a.) From July 23, 1930 to August 15, 1936 Lewis Luckenbach was employed by Luckenbach Steamship Company, but none of the payments were deducted from his salary.

In his personal income tax returns for the years 1941, 1942 and 1943 Edgar F. Luckenbach did not report as income the amounts which had been paid by check of the Luckenbach Steamship Company, endorsed by him to plaintiff and charged to the above "Loan Account." (P's Exs. 11, 11–a, 11–b.) Upon a determination by the Bureau of Internal Revenue that the additions to the "Loan Account" constituted taxable income to Edgar F. Luckenbach he was obliged to pay a deficiency assessment. It was found by the Collector respecting the 1941 return that these withdrawals made from the company were "in order to pay alimony to his son's former wife * * * taxpayer guaranteed these payments * * *." (P's Ex. 8.) Following the passage of Sections 22(k) and 23(u), I.R.C. in 1942, Edgar F. Luckenbach in his 1942 return deducted the payments made by him that year through company check to plaintiff, under Section 23(u). This deduction was disallowed on the ground that a deduction under this Section may be claimed only by an obligor spouse and "is not allowed to any other persons who may pay the alimony obligation of such obligor spouse." (P's Ex. 8–a.)

On March 15, 1943, plaintiff paid to the Collector of Internal Revenue for the Second District of New York income tax of $3,015.16 on the payments received by her in 1942 from Edgar F. Luckenbach pursuant to the "Agreement of Guarantee"; in 1944, she paid a tax of $1,793.22 on the payments made to her by Edgar F. Luckenbach's estate in 1943; in 1945 she paid a tax of $4,651.28 on the payments made by the Edgar F. Luckenbach estate in 1944; in 1946 she paid a tax of $1,891.49 for the 1945 payments; and in 1947 a tax of $2,731.72 on the

1946 payments. It is to recover these amounts that the instant suit was brought.

*The Separation Agreement of July 23, 1930* (P's Ex. 1)

This agreement provides for monthly payments by her husband, Lewis Luckenbach, to plaintiff for the support of herself and her son, custody of whom she was granted, and for the paying and keeping in effect by Lewis Luckenbach of certain insurance on his life for the sole benefit of plaintiff. Simultaneously, with the execution of this agreement, the husband obligates himself to deliver a surety company bond guaranteeing performance of the covenants of the agreement. On her part, plaintiff acknowledges receipt of the sum of $3,000 from her husband "in extinguishment of any and all claims on the part of the wife to any of the household furniture and furnishings now contained in the former home of the parties hereto in Sands Point, Long Island, New York, or elsewhere." (Para. 1(e). She agrees to accept timely appearance of her husband as defendant in the pending divorce action and to incorporate the separation agreement in any decree of divorce or separation she may obtain, waiving any further provision for alimony. It is mutually agreed that neither will make claim to any property which the other has or may control, or which the other may acquire and that "he or she will hereafter execute and deliver any instrument or instruments to more fully effectuate the same." (Para. 4(d).

*The Agreement of Guarantee of July 23, 1930* (P's Ex. 2)

In the first paragraph Edgar F. Luckenbach undertakes and agrees with plaintiff "one of the parties to the agreement being made and entered into simultaneously herewith, a true copy of which is annexed hereto and made part hereof, and bears even date herewith, that if default shall at any time be made by Lewis Luckenbach in the payment of any of the sums of money required to be paid by Lewis Luckenbach, as provided for in said agreement, or in the maintenance and the keeping in full force and effect of the policy or policies of insurance as provided for in said agreement, that I will well and truly pay the said sum or sums of money or any arrears thereof that may remain due in consequence of the nonperformance by the said Lewis Luckenbach of the covenants and terms of the said agreement in respect thereto, hereby undertaking and guaranteeing the full and complete performance by the said Lewis Luckenbach of the covenants and terms and conditions of the said agreement, and hereby waiving any notice of any default or defaults thereunder * * *." It is then recited that since Lewis Luckenbach "simultaneously with the execution of the annexed agreement" between him and plaintiff is delivering to her performance bonds covering a period of three years, the instant agreement shall not be enforcible until July 19, 1933, after which date it shall be a "continuing guarantee for and during the entire period of the said agreement annexed hereto and made part hereof" except during the period when the performance of the agreement is guaranteed by a surety company bond.

All of the payments due plaintiff were paid under this "Agreement of Guarantee"; no alimony payments were ever made to her by her husband, Lewis Luckenbach, under the "Separation Agreement."

■ There is no question but that if the payments had been made to plaintiff under the "Separation Agreement" by the husband directly they would be taxable under Section 22(k) as periodic payments in discharge of a legal obligation which, because of the marital relationship, was imposed upon or incurred by him under a written instrument incident to the divorce decree. Lerner v. Commissioner, 2 Cir., 1952, 195 F.2d 296. Consequently, if under the "Agreement of Guarantee" Edgar F. Luckenbach, the father, was discharging the legal obligation of his son, Lewis, under the "Separation Agreement" I would hold these payments taxable as alimony.

It is plaintiff's contention that the "Agreement of Guarantee" was wholly independent of the "Separation Agreement", supported by consideration exclusively of benefit to the father, Edgar F. Luckenbach, and that the payments under it were made by the father in discharge of a debt which was "original, primary and direct" to him and not in any sense that of his son, Lewis. Defendant, on the other hand, while conceding the father's purpose in entering into the agreement was "to secure a benefit or to promote his interest" maintains that the father was not paying his own debt to plaintiff since he owed none to her, but that he was in effect discharging the marital obligation of his son, Lewis, to plaintiff, the son's wife.

That there was consideration of benefit to the father, although not nearly so substantial as plaintiff claims, has been established; that plaintiff gave up substantial property rights which were of no benefit to Lewis in return for the father's promise is not so established.

The question before us then is, does the fact that there was independent consideration running to the father change the nature of the "Agreement of Guarantee" so as to relieve Lewis of his obligation to pay alimony under his agreement and not grant to the father a right to proceed against Lewis upon his default and payment by the father on subrogation of the wife's claim.

Under his agreement the father although motivated in part by personal reasons to secure a benefit to himself did assume his son's continuing obligation to his wife, and upon payment on the son's default he became subrogated to plaintiff's rights against her husband under the Agreement of Separation. This conclusion is inescapable from an examination of the agreement itself, the circumstances surrounding its making and the interpretation the parties themselves gave it.

██ I have noted that the "Agreement of Guarantee" was entered into simultaneously with the "Separation Agreement", which was annexed to and made part of it. It assured performance of the covenants of the "Separation Agreement"—"in the payment of any of the sums of money required to be paid" by the husband, to wit, alimony, and in the maintenance of insurance on his life and "any arrears that may remain due in consequence of the nonperformance." It waived notice of default by Lewis and was not to take effect during the period that Lewis' performance was guaranteed by a surety company undertaking and was to continue during the life of that agreement. Although the father's promise speaks of "guaranteeing" performance by Lewis and there is a provision waiving notice of default, the commencement of payment to plaintiff occurred without demand ever having been made upon Lewis to pay in the first instance. The father's promise under the agreement was direct and unconditional rather than collateral to that of Lewis. It may be more accurately said that the father became a surety rather than a guarantor. In the face of this language I cannot agree with plaintiff that the father's "Agreement of Guarantee" was distinct and apart from the "Separation Agreement" which it incorporates by direct reference. The two documents are but one contract under which Edgar F. Luckenbach and Lewis Luckenbach were jointly and severally bound.

So much for the agreement itself. I come now to the question of the consideration passing from plaintiff to Edgar F. Luckenbach upon which plaintiff relies to support her position that the former was discharging his own debt under the agreement. The entire controversy between plaintiff and the father leading up to the making of the "Agreement of Guarantee" revolves around the sequestration proceedings. These were a part of the divorce action she had instituted against her husband and would not have been available to her had personal service upon him been possible. Their only purpose could be and was to attach her husband's property as a source for the payment of any costs, expenses or ali-

mony awarded to her, and this was limited to property "which beyond any reasonable question belongs to the husband." As receiver in sequestration plaintiff could not attach any property belonging to Edgar F. Luckenbach, test title to any property of her own under his control, or attempt to collect a disputed debt from him. Rosenberg v. Rosenberg, 259 N.Y. 338, 182 N.E. 8. She could and did, however, proceed against him and his companies by way of examination only for the purpose of determining what property of her husband, Lewis, they held or controlled. Plaintiff's contention that in these proceedings she had individually asserted title in her own name to the Sands Point property which the father and Luckenbach Terminals, Inc., also claimed is based upon the recital in the affidavit made by plaintiff in the sequestration proceedings, which I have heretofore quoted, and the testimony of Raymond E. Stefferson at the trial. Aside from the fact that she could have obtained no relief with respect to establishing her title to this property in those proceedings, I do not read the recital as definitely asserting her individual claim to title. When in opposition to this motion made to compel surrender by plaintiff, as receiver, of the Sands Point premises she stated that she believed the property as well as the contents thereof belonged to her husband and her (and I shall assume it did), plaintiff was only attempting in that proceeding to retain that part of the property which belonged to her husband. As to the testimony of the witness Stefferson, the attorney who represented Edgar F. Luckenbach in those proceedings, it is no more than a statement that plaintiff has asserted title to the property in question. The examination of Edgar F. Luckenbach, as trustee of the estate of Lewis Luckenbach, Sr., deceased, was likewise for the purpose of determining whether he had any property belonging to plaintiff's husband, who was a contingent beneficiary under his grandfather's trust. And, with respect to this it was conceded by plaintiff and so testi-fied (Stefferson deposition (P's Ex. 12, D's Ex. A) that there was at the time no money in the trust owing to plaintiff's husband. It was revealed during this examination, however, that from the time he had become trustee in 1908, Edgar F. Luckenbach had never accounted and had commingled the assets; understandably enough, he was prepared to do "anything to get away from the accounting" twenty-two years later.

It was against this background with plaintiff intent on securing alimony and support from her husband, and Edgar F. Luckenbach equally intent on being freed from the embarrassing examinations and contempt proceedings that the agreements were drawn and executed. They were both part and parcel of the one negotiation; designed primarily to settle the marital problems of plaintiff and assure her of maintenance and support.

In her deposition (P's Ex. 15; D's D), plaintiff stated that she was fearful that if her husband (whose whereabouts were then unknown to her) left the state she would not be paid under the "Separation Agreement"; that although she expected her husband to pay, she never made any demand upon him and relied principally on the "Agreement of Guarantee"; that she was primarily interested in obtaining alimony; that her attorneys thought it would be to her benefit "so as I would be sure of getting that amount," that they advised her that the guarantee was an additional safeguard, and that as far as she was concerned the payments that were being received by her were alimony payments from her husband. Stefferson, who represented Edgar F. Luckenbach at these discussions with plaintiff and her attorneys, testified (P's Ex. 12, D's Ex. A) that he discussed with plaintiff's attorneys the drawing of the "Separation Agreement" and certain modifications, and the alimony to be paid plaintiff; that this was a "part of the settlement * * * a minor consideration"; and that Edgar F. Luckenbach knew that his son was not making the payments for he "cer-

tainly * * * would not be paying anything twice." Finally, Roscoe Hupper, the executor of the estate of Edgar F. Luckenbach who continued the payments after the latter's death, although he (Hupper) was not a participant in the negotiations, stated that his examination of the agreement revealed that the father "gave a guarantee of indemnity to the effect that if Lewis Luckenbach did not himself make the agreed alimony payment, then, pursuant to the indemnity Edgar would cause the same to be made." (P's Ex. 13; D's Ex. B.)

█ The "Agreement of Guarantee" was executed by plaintiff and Edgar F. Luckenbach. In exchange for the promise of Edgar F. Luckenbach to make these payments what valuable property rights did plaintiff in fact surrender to her husband's father? It should be remembered that preceding this agreement, plaintiff had entered into the "Separation Agreement" with her husband, under which she waived all claims to any of the household furniture at Sands Point or elsewhere and to any of her husband's property, and agreed she would execute any instrument to more fully effectuate the same and accept appearance by her husband in the divorce action. Under the stipulation of settlement entered into with her husband on the same day, in consideration of the "Separation Agreement" she agreed to terminate the sequestration and contempt proceedings and the examinations of Edgar F. Luckenbach in his dual capacity. This promise was made to her husband, not to Edgar F. Luckenbach. That the termination of the sequestration proceedings was of great benefit incidentally to the father is not disputed; it freed him from an onerous and unpleasant situation as a person who it was claimed might be holding property which plaintiff was attempting to reach. All that is left of these so-called substantial benefits conferred by plaintiff upon Edgar F. Luckenbach is that part of the releases which as an individual she executed to him and his company. Since plaintiff had not brought a claim against Edgar F. Luckenbach or his property individually, but only as receiver of her husband's property, the most that can be said for her individual releases is that she waived for the future any claim she might attempt to bring against any of his property. There is no indication that plaintiff contemplated any such action, and certainly on the facts here, there is no intimation that she was interested in anything but the obtaining of alimony. In short, what plaintiff surrendered in exchange for Edgar F. Luckenbach's promise, principally, was her right to sequester her husband's property. That his motive was primarily to buy his peace and that he received some independent consideration does not change the legal effect of his agreement; and I have found that he did become surety for the payment of his son's marital obligation.

Finally, that the parties themselves considered these payments alimony is evident from the fact that plaintiff never attempted to obtain or even demanded performance by Lewis of his obligations under the "Agreement of Separation"; and, that the father from 1937 and right up to the time of his death in 1943 charged the amounts paid to plaintiff to the "Lewis Luckenbach Loan Account" —something he would have had no right to do had he been paying as contended his own debt and not that of his son. The existence of this account is explained by plaintiff as a tax device to support the father's position that these payments were not taxable income to him since the sums were paid directly to plaintiff by the Luckenbach Steamship Company. In the first place, the payments made from 1937 through 1943 were not made directly to plaintiff, but were made by check of the company drawn to the order of Edgar F. Luckenbach and endorsed to plaintiff by him; secondly, after the Bureau of Internal Revenue in 1942 rejected the father's contention and taxed him with a deficiency assessment on these moneys, this "tax device" continued through December 1946. Although apparently no action has ever

been taken against Lewis with respect to this account and he never knew of its existence, Lewis Luckenbach did state on his examination (P's Ex. 14, D's C): "Hupper tried to charge me with this amount I would not agree to it and instructed my attorneys not to agree to it." Finally, in 1942 the father following the passage of the alimony statutes —22(k) and 23(u)—attempted unsuccessfully to deduct the payments made by him to plaintiff as alimony. A clear statement of what Edgar F. Luckenbach considered them to be!

 Having determined that Edgar F. Luckenbach in making these payments was discharging the obligation of his son under the "Agreement of Separation", it follows that as a surety he was entitled to be subrogated to plaintiff's rights against her husband under that agreement. The fact that he was motivated by a desire for personal benefit rather than to confer a benefit on Lewis, or that the latter never requested his father to make the payments or even knew that he was making them, or the fact that there was no written contract whereby Lewis agreed to indemnify his father, does not deprive the latter of this right, for it is a right given him by law rather than by express contract. Pittsburgh-Westmoreland Coal Co. v. Kerr, 220 N.Y. 137, 115 N.E. 465.

"The right of subrogation arises whenever one, under compulsion or to protect his property interests, pays a debt which ought in equity and good conscience, to be paid by another." Sloat-Darragh Co. v. General Coal Co., 6 Cir., 276 F. 502, 506.

And,

"The law implies a promise on the part of the principal to indemnify the surety, and to pay him all the money he might be compelled, in consequence of his liability as surety to pay the creditor. * * * It is the rule that a payment by a surety or guarantor for the account of a principal is presumed to be at the request of the latter, which raises an

implied promise of reimbursement." Blanchard v. Blanchard, 61 Misc. 497, 113 N.Y.S. 882, 884, 885.

See also Stearns on Suretyship, Sec. 296, and Williston on Contracts, Secs. 1211, 1265 et seq. Nor, does it make any difference that in all the years that Edgar F. Luckenbach and later his estate continued to make these payments, they never were reimbursed by Lewis. If the right arose in Edgar F. Luckenbach's favor or that of his estate it was their privilege to waive it and such waiver would not operate to change the nature of the agreement; and this would be so whether the father was a guarantor or a surety. Blanchard v. Blanchard, supra; Ost v. Mindlin, 170 App.Div. 558, 156 N.Y.S. 695, affirmed 224 N.Y. 668, 121 N.E. 882; Howell v. Commissioner, 8 Cir., 69 F.2d 447.

 I have found that the "Agreement of Guarantee" and the "Agreement of Separation", incorporated one in the other as they were, resulted in but one contract under which Edgar F. Luckenbach became jointly and severally liable with Lewis. It follows then that the "Agreement of Guarantee" being a part of the "Agreement of Separation" constituted a written instrument incident to the divorce decree, and that the payments made thereunder were in discharge of a legal obligation made specific by such decree. Commissioner of Internal Revenue v. Murray, 2 Cir., 174 F.2d 816; Cox v. Commissioner, 3 Cir., 176 F.2d 226. That Edgar F. Luckenbach was not a party to the divorce action is immaterial since the payments he made whether as a gift or a loan to his son were on behalf of Lewis who was a party to that action.

There remains but one further point which plaintiff raises and this is, that assuming a right of subrogation did exist in favor of Edgar F. Luckenbach, Sec. 22(k) should not be extended to include these payments since the corresponding right that they are deductible by Lewis under Sec. 23(u) is not available to him. Although the reasons advanced by plaintiff in support of this position—that the

payments were never actually made by Lewis, he not having repaid Edgar F. Luckenbach or his estate, and that these moneys were not includible in his gross income (Sec. 29.23(u) (1), Reg. 111 and Sec. 23(u), poses an interesting question it need not now be determined. The only parties before the court are plaintiff and the Collector; the only issue is taxability under Sec. 22(k); I could certainly not attempt to adjudicate Lewis Luckenbach's rights as a taxpayer absent that issue and the taxpayer himself.

It is unnecessary to consider the question of taxability of these payments under Sec. 22(a), since I have found that they were properly taxed as alimony payments.

Complaint dismissed with costs to defendant.