ASAHEL F. BENNETT et al.

v.

FRANK R. CHANDLER et al.

*Opinion filed October 25, 1902.*

1. SUBROGATION—*volunteer can claim no rights under the doctrine of subrogation.* An agent of a mortgagee, who receives unendorsed interest coupons for collection, and who, instead of collecting them, remits amounts thereof out of his own funds without the knowledge of either the mortgagee or the mortgagor and without being under any obligation to do so, is a mere volunteer, and cannot be subrogated to the rights of the mortgagee in the coupons.

2. PRINCIPAL AND AGENT—*agent for collection has no authority to endorse.* An agent has no authority to endorse his principal's name upon the back of interest coupons which have been sent to him merely for collection.

3. SAME—*when agent cannot claim as a purchaser of interest coupons.* An agent who receives interest coupons for collection from the mortgagee, and who, wishing to conceal the mortgagor's default in order to retain the mortgagee's patronage, remits the amounts thereof out of his own funds without the knowledge of the mortgagee or mortgagor and without any understanding with the latter that he should hold the coupons as uncanceled securities, is a mere volunteer, and is not entitled to the protection of the mortgage as a purchaser of the coupons.

*Chandler v. Green,* 101 Ill. App. 409, reversed in part.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

A bill was filed in the circuit court of Cook county on August 12, 1898, by the defendant in error, Frank R. Chandler, individually and as first successor in trust, and Henry T. Chace, second successor in trust, against Asahel F. Bennett, Francis F. Smith, and Anna F. Smith, his wife, Prescott Doughty Bennett, a bachelor and a minor, George A. Hawley, trustee, Henry C. Fuller, trustee, and others, to foreclose the trust deed hereinafter mentioned, executed by Bennett and Smith, as to certain interest

coupons thereby secured, subject to the lien of said trust deed for the indebtedness thereby secured other than, and in addition to, the amount due upon said coupons. Joint and several answer to said bill was filed by plaintiffs in error Asahel F. Bennett, Francis F. Smith, George A. Hawley, trustee, and Henry C. Fuller, trustee.

On March 26, 1900, Hetty H. R. Green and Edward H. Green, trustee, filed a bill for the purpose of foreclosing said trust deed as to the principal note thereby secured and certain other interest coupon notes not hereinbefore mentioned, against Asahel F. Bennett, Francis F. Smith, Prescott Doughty Bennett, a minor, George A. Hawley; trustee, Henry C. Fuller, trustee, Frank R. Chandler, Frank R. Chandler, successor in trust, Henry T. Chace, second successor in trust, and one Oscar Janitschke. To this bill Frank R. Chandler individually, and as successor in trust, and Henry T. Chace, second successor in trust, filed an answer, to which replications were duly filed.

On May 9, 1900, the cause of Chandler *vs.* Bennett *et al.* and the cause of Green *vs.* Bennett *et al.* were consolidated, and the bill in the former case, after the consolidation, was treated as a cross-bill in the case of Green against Bennett, which said cross-bill was subsequently amended. The cause was referred to a master, who took testimony and reported the same with his conclusions.

The court below on October 31, 1900, rendered a decree in the consolidated case, granting a foreclosure of the trust deed as to the principal note and the unpaid coupon notes held and owned by Hetty H. R. Green. The decree also found that the material allegations of the cross-bill of Chandler were proven, and that there was due to him upon the *coupon* notes, claimed by him, the sum of $1089.43 with lawful interest thereon from June 30, 1900, and also the sum of $50.00 as a reasonable solicitor's fee, found due by said report. The decree was in form a regular foreclosure decree as to the notes owned by Hetty H. R. Green, and provided for a deficiency de-

cree. The decree also provided for a deficiency decree in case of deficiency in the amount due the cross-complainant and for execution against Bennett and Smith, holding them personally liable therefor, etc. An appeal was taken by Frank R. Chandler, individually, and as successor in trust, to the Appellate Court, upon the ground that a certain sum of money, claimed to have been advanced by Chandler to pay insurance upon the mortgaged premises, was not allowed to him. Cross-errors were assigned in the Appellate Court by Asahel F. Bennett, Francis F. Smith, George A. Hawley, trustee, Henry C. Fuller, trustee, and William C. Snow, guardian *ad litem* of Prescott Doughty Bennett.

The decree of the circuit court was affirmed by the Appellate Court, and the present writ of error is prosecuted from such judgment of affirmance.

The material facts are substantially as follows: On March 1, 1887, plaintiffs in error, Bennett and Smith, executed a trust deed upon a certain lot in Cook county to secure a note for $5000.00, payable to the order of Hetty H. R. Green, in five years after date, with interest at seven per cent per annum before maturity, and eight per cent after maturity, the interest being payable semi-annually. On March 1, 1892, upon the maturity of the debt, an extension agreement for five years was executed, and new interest notes, bearing that date, were given for that period. The extension was to March 1, 1897, with interest at six per cent per annum before maturity, and seven per cent per annum after maturity. The installments of interest were evidenced by extension interest coupons of $150.00 each, due every six months, to-wit, on May 1 and November 1 of each year. The trustee, named in the trust deed, was Edward H. Green, and Frank R. Chandler was named as successor in trust. The interest coupon notes, each for $150.00, were made payable to the order of Hetty H. R. Green at the Chemical National Bank in New York City.

Frank R. Chandler is the sole surviving member of the firm of Chandler & Co., composed of Peyton R. Chandler and Frank R. Chandler up to the time of the death of the former on November 10, 1896. Chandler & Co. were engaged in the business of mortgage bankers in Chicago, and negotiated loans upon real estate security for their customers. They negotiated the loan, evidenced by the notes and trust deed described in the bill and cross-bill. The extension agreement and interest notes on March 1, 1892, when executed, were sent by Chandler & Co. to Mrs. Green in New York, and were held by her.

All the interest coupons up to May 1, 1894, were paid; but the extension interest coupons, each for $150.00, numbered 5, 6, 7 and 8, due on May 1 and November 1, 1894, and May 1 and November 1, 1895, were not paid by Bennett and Smith, the makers thereof, but the money due upon the same was advanced to Mrs. Green by Chandler & Co. in the manner hereinafter stated. When these coupons numbered 5, 6, 7 and 8 matured, they were sent by Mrs. Green to Chandler & Co., stamped upon their face "for collection only." Chandler & Co. did not collect them of the makers, Bennett and Smith, and, so far as the record shows, did not make any effort to collect them, and did not report the default of the makers to pay them to Mrs. Green, who was the owner of the principal note and the interest coupons. Chandler & Co., however, remitted out of their own funds the amounts of these coupon notes to Mrs. Green. These four remittances of $150.00 each were made without request or authority from the makers of the notes, Bennett and Smith. Bennett and Smith did not know that the money had been so advanced by Chandler & Co., until long after the remittances had been made. The money was sent to Mrs. Green as though it had been paid to Chandler & Co. by the makers of the notes, and, so far as the record shows, Mrs. Green did not know that these interest coupons had not been paid by the makers. She acted upon the supposition that the

coupons were paid. These interest coupons were payable to the order of Mrs. Green, but were never endorsed by her or in any way assigned to Chandler & Co. Frank R. Chandler filed the bill, heretofore mentioned, on August 12, 1898, for the purpose of enforcing a lien upon the premises, conveyed by the trust deed, for the payment of these coupon interest notes, subject, however, to the lien of the trust deed, so far as it secured the notes owned by Mrs. Green, to-wit, the principal note for $5000.00 and three extension interest coupons numbered 9, 10 and 11, the first two being for $150.00 and the last for $100.00.

Shortly before the filing of his bill, Chandler wrote on the back of the notes the words, "Without recourse, Hetty H. R. Green, by Chandler & Co., Agts.;" and, at the hearing of the cause, his solicitor wrote above this endorsement the words, "Pay to the order of Frank R. Chandler." These endorsements were made without the knowledge of Mrs. Green. · The decree found that there was due upon the principal note and the coupon notes, owned by Mrs. Green, the sum of $7154.01 with interest from June 30, 1900, and also the sum of $200.00 as solicitor's fees. The court, however, found in its decree that the sum of $1089.43, so found due to Frank R. Chandler, was a second and subordinate lien on the premises to the lien of Mrs. Green, and that she should be first paid all sums due her prior to the payment to Chandler of the said sums so found due to him, and the decree recites that this finding was made with the consent and the request of Frank R. Chandler.

The evidence tended to show, or at any rate it was claimed by Chandler & Co., that they had a custom of remitting the interest on loans negotiated by them, whether such interest had been paid by the makers of the notes or not, but the proof does not show that Mrs. Green, or Bennett and Smith, knew anything about this custom.

After the execution of the trust deed, the mortgagors, Bennett and Smith, conveyed the property to Hawley

and Fuller as trustees for Prescott Doughty Bennett, a minor. Chandler's bill seeks to enforce a personal liability against the mortgagors, Bennett and Smith, who have ceased to own the property, and to enforce the lien against the trustees of the minor.

The amount of insurance money, which, as Chandler claims, should have been allowed him, was $37.27, on account of the non-allowance of which he took the case to the Appellate Court.

TENNEY, MCCONNELL, COFFEEN & HARDING, for plaintiffs in error.

STILLMAN & MARTYN, for defendants in error.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The principal note of $5000.00, and the extension interest coupons, numbered 5, 6, 7, 8, 9, 10 and 11, were all owned by Hetty H. R. Green, and were payable to her order. Chandler & Co., who were her agents for the collection of the coupons, remitted to her the amounts of the extension interest coupons, numbered 5, 6, 7 and 8, and due respectively May 1 and November 1, 1894, and May 1 and November 1, 1895. But the money, so remitted to Mrs. Green upon these four interest coupons, was not paid by the makers thereof, Bennett and Smith, but was advanced by Chandler or Chandler & Co. out of their own private funds. Mrs. Green did not know that the money so remitted was advanced by Chandler & Co., and was not informed by Chandler & Co. that Bennett and Smith had made default in the payment of·the coupons. So far as the record shows, Mrs. Green supposed that the money remitted to her was paid to Chandler & Co. by the makers of the notes. It is not shown by the evidence that she knew anything to the contrary. The evidence is also quite clear that Bennett and Smith, the makers of the coupon notes, had no arrangement or agreement

with Chandler, or Chandler & Co. by the terms of which Chandler & Co. were to make these remittances for the makers of the note. Indeed, the proof shows that Bennett and Smith knew nothing about the fact that Chandler & Co. had remitted to Mrs. Green the amounts due on these coupons, until after such remittances were made. The reason, given by Chandler & Co. for so making the remittances, was that they desired to retain the custom and patronage of Mrs. Green; and, as the loan had been made through them, and Mrs. Green had advanced her money upon the loan upon their recommendation, they concealed from her the fact that the makers of the notes had made default in their payments. By making these remittances they unquestionably led Mrs. Green to believe that the makers of the notes had made the payments, as they were required to do by the terms of the notes.

Under this state of facts, the question arises whether Chandler, the surviving partner of Chandler & Co., has any right to enforce the lien of the trust deed against this property, in order to pay himself the amount of these coupon notes, of which he claims to be equitably, if not legally, the owner. The decree not only provides for a sale of the premises subject to the lien of the trust deed to the extent of the principal and interest coupon notes owned by Mrs. Green, but it provides that, in case of a deficiency in the amount found to be due to Chandler, there shall be a personal decree and execution against Bennett and Smith. Unquestionably, Chandler & Co., in making the payments which they made, were mere volunteers. The rule is well settled both by the decisions of this court, and by the decisions of other courts, and by all the text books, that, under the state of facts above set forth, Chandler & Co. could not be subrogated to the rights of Mrs. Green in the interest coupons, for the payment of which they advanced the money.

There can be only two theories, upon which Chandler can base any right to enforce the amount, advanced by

him or his firm to Mrs. Green upon these coupons, as a lien against the property. One of these theories is, that Chandler & Co., or Chandler as a successor of Chandler & Co., was subrogated to the rights of Mrs. Green. The other theory is, that Chandler was a purchaser of the coupons.

Chandler can claim no right, as already stated, under the doctrine of subrogation, because, in making the payment, he was a mere volunteer. In *Hough* v. *Ætna Life Ins. Co.* 57 Ill. 318, this court held, that "a mere stranger or volunteer cannot, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor. But if the person, who pays the debt, is compelled to pay for the protection of his own interests and rights, then the substitution should be made." To the same effect also is *Young* v. *Morgan,* 89 Ill. 199.

The doctrine has been thus clearly and concisely stated: "One, who advances money to pay the debt of another in the absence of agreement, express or implied, for subrogation, will not be entitled to succeed to the rights and remedies of the creditor so paid, unless there is some obligation, interest, or right, legal or equitable, on the part of such person in respect of the matter concerning which the advance is made, as otherwise he is a stranger, a volunteer, an intermeddler, to whom the equitable right of subrogation is never accorded." (24 Am. & Eng. Ency. of Law,—1st ed.—pp. 281-286).

In *Bishop* v. *O'Conner,* 69 Ill. 431, this court said in relation to the state of facts existing in that case (p. 437): "The doctrine of subrogation would not apply. That doctrine is confined to the relation of principal and surety, and guarantors, or to cases where a person, to protect his own junior lien, is compelled to remove one which is superior, and in cases of insurers paying losses."

In *Shinn* v. *Budd,* 14 N. J. Eq. 236, it was said by the chancellor: "Subrogation as a matter of right, as it ex-

ists in the civil law, from which the term has been borrowed and adopted in our own, is never applied in aid of a mere volunteer. Legal substitution to the rights of a creditor, for the benefit of a third person, takes place only for his benefit, who being himself a creditor, satisfies the lien of a prior creditor, or for the benefit of a purchaser who extinguishes the encumbrances upon his estate, or of a co-obligor or surety who discharges the debt, or of an heir who pays the debts of the succession."

In *Sandford* v. *McLean*, 3 Paige, 122, Chancellor Walworth said: "It is only in cases where the person, advancing money to pay the debt of a third party, stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. In other cases, the demand of a creditor, which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished."

In the case at bar, there was no obligation on the part of Chandler or Chandler & Co. to pay these coupons. They were not holders of any junior lien, which it was necessary for them to protect. They were not creditors of Bennett and Smith, nor was there any necessity for them to satisfy the lien of any prior creditor in order to protect any interest of their own. It follows that they were purely and simply volunteers. It is true, that Frank R. Chandler was named as successor in trust in the trust deed, securing the principal and interest notes. It is also true, that he was the agent who sold the securities to Mrs. Green, and was also her agent to collect the interest coupon notes when they became due, and to keep the taxes and insurance premiums upon the premises paid up in the event of the failure of the mortgagors to pay the same. But they were not authorized by their relations in these respects to the property, or to the owner

of the securities, to step in and pay off the interest coupons in the place and stead of the debtors themselves.

It has been said, that "a stranger within the meaning of this rule is not necessarily one, who has had nothing to do with the transaction out of which the debt grew. Any one, who is under no legal obligation or liability to pay the debt, is a stranger, and, if he pays the debt, a mere volunteer." (24 Am. & Eng. Ency. of Law,—1st ed. —p. 283, note; *Suppiger* v. *Garrels*, 20 Ill. App. 625).

Inasmuch, therefore, as Chandler was a mere volunteer, he was not subrogated in any way to the rights of Mrs. Green, as the holder of the coupons in question.

Nor can we see any way, by which Chandler can be held to be the purchaser or assignee of such interest coupons. These coupons were payable to the order of Mrs. Green, and they were never endorsed by her to Chandler & Co. Chandler & Co. had no authority to endorse her name upon the back of these interest coupons, merely because they were agents to collect the coupons, and because the coupons were in their possession for such collection. (Mechem on Agency, secs. 398, 392 and 406). Their endorsement was never authorized by her. If there had been any agreement between Mrs. Green and Chandler & Co., by the terms of which Chandler & Co. were to hold the coupons as uncanceled securities to be kept alive for their benefit, another question would arise. But the evidence shows that there was no such agreement, nor even any knowledge on the part of Mrs. Green that the money remitted was the money of Chandler & Co. A different question might arise, if there had been any understanding between Chandler & Co. on the one side, and Bennett and Smith, as the debtors or makers of the coupons, on the other, that Chandler & Co. were to advance the money for Bennett and Smith to pay their debt for them, and thereby be entitled to keep the coupon notes alive, and enforce them against the property. But the proof shows that there was no such arrangement,

and also shows that Bennett and Smith knew nothing about the advance of money, so made by Chandler & Co. to Mrs. Green.

In *Pearce* v. *Bryant Coal Co.* 121 Ill. 590, we held that a trustee in a deed of trust, given to secure coupon bonds, who furnished the money for the payment of certain of the coupons, is not entitled to be subrogated to the rights of a coupon holder against the trust property. In the latter case, where a corporation gave its bonds with interest coupons secured by a deed of trust, and the trustee, at the request of an officer of the corporation, paid the first set of coupons and took them up, it was held that such coupons became extinguished, and could not be enforced by the trustee so paying the same, and that they ceased to be a lien on the mortgaged property; and it was there said: "The rule is, that the demand of a creditor, which is paid with the money of a third person without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished."

In *Bank* v. *Craig*, 63 Ohio St. 374, it was held that, where a negotiable promissory note is endorsed for collection and sent to the place of payment, the person, receiving such note with such endorsement, has no power to sell or transfer the note; his power is limited to collection; where a person receiving such note remits the amount thereof out of his own funds to the owner as though he had in fact collected the note, such transaction is a payment and extinguishment of the note, and not a transfer thereof; if such payment is made with the assent of the maker, he becomes liable as for money paid to his use or liable on the note as a re-issued note; but, as to a maker who does not assent to such payment, there is no liability, either on the note or for money paid to his use. In the latter case, also, it was held that a person making such payment is, as to non-assenting makers, a volunteer, and not entitled to subrogation, it

being there said: "The endorsement was a restricted
one, and the bank had no authority to do more than re-
ceive payment, and it could not keep the note alive after
payment for any purpose. Payment, even by a volun-
teer, was the death of the note. A person, who volun-
teers to pay the note of another, cannot by such payment
make himself the owner of the note without the knowl-
edge and consent of the holder thereof. He cannot act
both as buyer and seller at the same time, bargaining
with himself. * * * The doctrine of subrogation has
no application to payments made by a mere volunteer,
and the bank in this case was purely a volunteer. There
was no lien or security in the case to be kept alive by
subrogation."

Counsel for defendants in error cite, in support of
their contention, the case of *Ketchum* v. *Duncan*, 96 U. S.
659, and other cases based upon and following *Ketchum*
v. *Duncan*. The latter case, however, when its facts and
reasoning are carefully examined, does not support the
contention of defendants in error. In *Ketchum* v. *Duncan*,
*supra*, it was said: "It is undoubtedly true that it is es-
sential to a sale that both parties should consent to it.
We may admit, also, that where, as in this case, a sale,
compared with payment, is prejudicial to the holder's
interest by continuing the burden of the coupons upon
the common security, and lessening its value in refer-
ence to the principal debt, the intent to sell should be
clearly proved." If it is essential to a transfer or sale
of such coupons as these that both parties should as-
sent to the sale, then there was no valid sale or transfer
in the case at bar, because there is no claim that Mrs.
Green, the holder of the coupons, assented to their sale
or transfer to Chandler & Co. Moreover, it appeared in
*Ketchum* v. *Duncan*, *supra*, that the holders of the coupons
knew that the money, which was advanced, was not paid
by the debtor, and that Duncan, Sherman & Co., who
paid the money, were purchasing the coupons with their

own funds, intending to hold them. In the case at bar, however, Mrs. Green did not know that the money remitted to her was not paid by the debtors, nor did she know that Chandler & Co. were purchasing the coupons with their own funds, intending to hold them. It furthermore appears in the case of *Ketchum* v. *Duncan, supra*, that the company, which executed the coupons, was informed that it was the intention of the party, advancing the money, to pay them and make a purchase of the coupons, and the consent of the company was given to such purchase. It is not claimed in the case at bar, nor could it be claimed, that Bennett and Smith, the debtors, were informed of or knew anything about the intention of Chandler & Co. to purchase these coupons, nor did they ever give their consent to such purchase. That the foregoing is a correct interpretation of the case of *Ketchum* v. *Duncan* is shown by the references made to it by the Supreme Court of the United States in subsequent cases, notably the cases of *Wood* v. *Guarantee Trust Co.* 128 U. S. 425, and *Morgan's Co.* v. *Texas Central Railway Co.* 137 id. 196. In *Wood* v. *Guarantee Trust Co. supra*, the court said: "In *Ketchum* v. *Duncan* stress was laid on these circumstances, viz., that the persons alleged to have paid the coupons had no connection with the company issuing the coupons, or interest in it; that they had repeatedly and publicly notified the holders of the bonds and coupons that the coupons were to be purchased, not paid; and that the coupons were carefully received and preserved uncanceled."

In view of the law, as laid down in the authorities above referred to, and in many other authorities not here mentioned, it is impossible to escape the conclusion that in this matter Chandler & Co. were mere volunteers, and, therefore, not entitled to be subrogated to the rights of the holder of these coupons, and that they were never purchasers or assignees in any way of the coupons so as to be entitled to enforce them. In one aspect it may

seem inequitable that these plaintiffs in error should receive the benefit of a payment, which they themselves did not make, but the result cannot be avoided unless the established rules of law are to be set aside and ignored.

The decree of the court below, so far as it granted to Hetty H. R. Green, the holder of the principal note and the unpaid coupons, a foreclosure of the trust deed in question, is correct, but, so far as that decree granted relief to Chandler by allowing him to enforce a lien against the premises in respect to the coupons paid by him, the decree is wrong, and must be reversed. In view of the conclusion thus reached, it will be unnecessary to notice the other objections made to the decree.

Accordingly, the judgment of the Appellate Court and the decree of the circuit court are reversed so far as they grant relief upon Chandler's cross-bill, but are affirmed so far as they grant relief to the holder of the principal note and the unpaid coupon notes.

*Partly affirmed and partly reversed.*