Harris Trust & Savings Bank, Executor, etc., Appellee,
v. Robert Lennox et al. Russell S. Clark, Appel-
lant.

Gen. No. 35,114.

Opinion filed December 2, 1931.

CLARK & CLARK, for appellant.

WILLIAM H. TUTTLE, for defendant Cora J. Crawford. COOKE, SULLIVAN & RICKS, for defendant Joseph E. Daily.

MR. JUSTICE WILSON delivered the opinion of the court.

This is an appeal by Russell S. Clark from a decree of the superior court of Cook county denying him a lien on certain premises which were being foreclosed in that court. The action was brought by the Harris Trust & Savings Bank, executor of the estate of John R. Taylor, to foreclose its first mortgage on the property described as: "Lot twenty-four (24) in Broad's Subdivision of the West two-thirds (⅔) of the Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) of the Northwest Quarter (NW¼) of Section three (3) in Township thirty-eight (38) North, Range fourteen (14) East of the Third Principal Meridian," situated in the City of Chicago, county of Cook and State of Illinois. The mortgage in question was given to secure 17 notes aggregating $33,000. The notes numbered 1 to 10 inclusive, were for $1,000 each; the notes from 11 to 16 inclusive, were for $1,500 each; note number 17 was for $14,000. Notes numbered 1 to 14 inclusive, had been paid. Note number 17 for $14,000, was unpaid.

The only question involved upon this appeal is whether notes 15 and 16 were paid, or whether they were purchased by Clark. In the event that said notes were purchased by Clark, it is his contention that he became subrogated to the rights of a holder for value and entitled to payment under the foreclosure proceeding before payment to the defendants who were junior lienholders. The position taken by the other lienholders is that Clark's payment on these notes gave him no rights against the property, but that he was an outsider and a mere volunteer and, therefore, not en-

titled to subrogation. From the facts in evidence it appears that the property in question was improved with a flat building and, at the time of the execution of the mortgage herein being foreclosed by the Harris Trust Company, was owned by Robert Lennox and Henry Hall; that on or about March 9, 1922, Hall conveyed his interest in the property to Robert Lennox and that Lennox in turn conveyed to one Edward Bernahl, who was made a party defendant to this proceeding. August 10, 1926, Joseph E. Daily, a party defendant to this proceeding, filed a creditor's bill in the circuit court of· Cook county against Fred J. Williams, Edward Bernahl and Gerald A. Rolfes, claiming that the property in question was, in fact, the property of F. J. Williams and that, while the title was in Bernahl, Bernahl was holding it for the benefit of Williams. The judgment of Daily, as well as that of Crawford, also a party defendant to this proceeding, was declared a lien on the property in question based upon the finding of the circuit court that Williams was the real ·owner of the property and that Bernahl held title for his benefit. These judgments and the decree entered in the circuit court finding the property in Williams are cited for the purpose of showing what, if any, interest Williams had in the property, and casting a light upon his connection with the subsequent proceedings under which Clark claims to have purchased the notes in question.

Clark and Williams were made parties to the foreclosure proceeding on the theory that they had or claimed to have some interest in the property. Williams made no claim, but Clark took the position, as already stated, that notes 15 and 16 were purchased by him and that he was entitled to a lien on the property as the holder of a note secured by the first mortgage, and which was therefore prior to the liens of the other parties defendant.

Williams testified that on or about October 15, 1924, he gave his check for $1,534.75 to Whitman; that on October 24, 1924, he gave Whitman his check for $479.85; that he paid these amounts from money received from Clark; that Clark wanted him to get the note uncanceled; that these payments were made to one Russell Whitman, a practicing attorney, who represented John R. Taylor, the then holder of the mortgage; that Whitman refused to turn over the notes to Williams but made a memorandum of the transaction, as follows:

"(To be attached to Hall v. Lennox note for $1500—strong box)

"Attached note was paid in full with interest—last pay't made Oct. 24, 1924, F. J. Williams made the payment but at his request note not marked 'Cancelled & paid'. F. J. W. is informed that we are entirely willing to mark it pd. by hand of F. J. W. but that we can not turn it over to him unmarked. Should he however buy the other notes held by J. R. Taylor secured on same property which secured the attchd. F. J. W. is informed that probably J. R. T. would turn attached over to F. J. W., uncancelled." Williams also testified that, at the time of the payments, he asked Whitman not to indorse the payments on the note and that Whitman said he would make this separate memorandum. There were other payments also made which were to be applied on note 16. It appears from the record that these payments were made under the same circumstances. It also appears that there was a balance of $433.36 due and unpaid on note 16. Williams testified that he did not tell Whitman whose money it was that he used to pay for the notes, and that Whitman had no reason to suppose that it was anybody's money other than Williams. He also testified that at the time he made the payments he was not the owner of the property, but that he had traded it to John A. Craw-

ford; that the checks which he gave in payments on the notes were his own checks and drawn by him; that he would borrow the money from Clark a day or two before in order to deposit the exact amount of his payment. He testified that he had had numerous dealings with Mr. Clark.

Clark's position appears to be that he advanced the money in order to purchase the notes and that Williams was acting for him in the transaction. If this were true, then Williams was a mere agent and Clark was the principal. We are at a loss to understand why Clark did not insist upon Whitman turning over the notes upon payment if he was a purchaser in good faith. The master found, and the court by its decree also found, that the money paid by Williams was not to purchase the notes, but was a payment on the notes, and the interest then due, and was so considered by Whitman at the time. If this is the fact, then Clark was a mere volunteer and not entitled to be subrogated to the rights of a holder of the notes.

The right of subrogation does not belong to a mere volunteer. Legal substitution belongs to one who, being himself a creditor, satisfies the lien of a prior creditor, or a co-obligor or surety who discharges a debt, or under such peculiar circumstances as the law has recognized. In the case of *Bennett v. Chandler*, 199 Ill. 97, the court in its opinion said:

"In the case at bar, there was no obligation on the part of Chandler or Chandler & Co. to pay these coupons. They were not holders of any junior lien, which it was necessary for them to protect. They were not creditors of Bennett and Smith, nor was there any necessity for them to satisfy the lien of any prior creditor in order to protect any interest of their own. It follows that they were purely and simply volunteers." Cases cited.

Mr. Clark in his reply brief says:

"The contention that Williams, therefore Clark, was a mere volunteer in making these payments, and that the case of *Bennett v. Chandler* applies, is preposterous; while Crawford's agent held title the bill for rescission was filed; Williams expected to get the building back, as he was not resisting that portion of the prayer of the bill. (Abst. 32; Rec. 231); he was just as much interested in this property as though the legal title stood in his name, and had a perfect right to request appellant to make these payments and hold the paper uncanceled as security for his advancements; . . ." This position is clearly contradictory to the position taken by Clark in his original brief. Williams testified that he was buying the notes for Clark and at no time contended that they were to be held for his, Williams', benefit. If it was a fact that at the time Williams paid the money in question on the notes and interest due, then there is a presumption that they were intended as payment if he was at the time the real owner of the equity.

We see no reason for disturbing the finding of the chancellor as set out in the decree.

For the reasons stated in this opinion, the decree of the superior court is affirmed.

*Decree affirmed.*

HEBEL, P. J., and FRIEND, J., concur.