Lake View Trust and Savings Bank, Appellant, v. Joseph P. Rice et al., Appellees. Cross Appeal of Frank Burket, Cross Appellant.

Gen. No. 37,386.

Opinion filed April 10, 1935,

Robert E. Downs, of Chicago, for appellant; John M. Bryant and John E. Pavlik, both of Chicago, of counsel.

Shulman, Shulman & Abrams, of Chicago, for cross appellant; Meyer Abrams, of counsel.

Glenn, Schwartz, Real & Browning, of Chicago, for certain appellee; Raymond G. Real and James K. Kneussl, of Chicago, of counsel.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an appeal by the complainant from the entry of a decree in the superior court of Cook county, Illinois, in a foreclosure proceeding. A bill was filed by the complainant to foreclose the lien of a trust deed executed by Joseph P. Rice and Anna L. Rice, his wife, conveying to the trustee the improved real estate located at 8212–20 Drexel avenue, in Chicago, Illinois, to secure the payment of a bond issue of $105,000. The bill made certain named parties defendants.

The cause was referred to a master in chancery of the superior court, who in due course filed his report recommending that a decree of foreclosure be entered by the chancellor. The decree of sale was entered on November 29, 1933, from which it appears that exceptions to the master's report were sustained, and thereupon in order to comply with the order of the court, the master in chancery amended his report to meet the views of the chancellor.

The material findings appearing in this decree and which are to be considered on this appeal, are, in substance, as follows:

That the complainant herein, as successor-trustee, for the equal and pro rata benefit of all the bondholders and owners of all the unpaid, outstanding and

unsubordinated bonds and interest coupons, secured by said trust deed, has a valid and subsisting lien against the premises involved herein, and the rents, issues and profits thereof, for the sum of $93,514.07, together with interest thereon, from the date of the master's report, August 2, 1933.

That Wm. H. Whalen, as receiver of the said Reliance Bank and Trust Company, has a valid and subsisting lien against the premises involved herein, and the rents, issues and profits thereof, by reason of the ownership of bonds Nos. 7 to 12, inclusive, together with interest coupons series Nos. 5 and 6, and there is due thereon the sum of $12,855.19, together with interest, from the date of the master's report, August 2, 1933.

That Frank Burket is the legal holder and owner of bonds numbered consecutively from 146 to 165, both inclusive, and the interest coupons thereto attached, which bonds and interest coupons were subordinated to the lien of all the other bonds and interest coupons secured by the trust deed, as aforesaid, and by virtue of his ownership thereof, the said Frank Burket is entitled to recover the sum of $11,514.22; that said bonds are secured by said trust deed, and Frank Burket has a valid and subsisting lien against the premises involved herein, and the rents, issues and profits thereof, for the sum of $11,514.22, together with interest thereon, from the date of the master's report, August 2, 1933, which lien, however, is subject, subordinate and inferior to the lien of the complainant herein, as successor-trustee, for its own benefit, and to the lien of Wm. H. Whalen, receiver of the Reliance Bank and Trust Company, for the amount appearing in the finding.

The facts as they appear from the evidence, are, substantially, that on July 24, 1928, the complainant purchased from the Reliance Bank and Trust Com-

pany and was the owner and holder of the issue of bonds, in the amount of $95,000. This constituted the entire issue with the exception of bonds numbered 146 to 165, both inclusive, which bonds aggregated the sum of $10,000. As a part of the inducement to the complainant and in consideration of its purchase of the aforementioned bonds, the Reliance Bank and Trust Company agreed to, and did, subordinate the payment of said bonds numbers 146 to 165, both inclusive, and interest coupons attached, to the payment of the bonds and interest coupons purchased by complainant.

At the time of delivery of the bonds to the complainant there were stamped on the face of each of the bonds numbered 146 to 165 the words, "This is a subordinated bond." This same stamp was also placed on the back of each bond, and in addition there was placed on the back of each bond a legend to the effect that the bonds were subordinated. There was also stamped on each of the interest coupons the following: "This is a subordinated coupon."

From the evidence it further appears that complainant purchased the bonds and resold them to its numerous customers; that subsequent to the purchase of the bonds, by the complainant, the remaining bonds and interest coupons, all bearing the stamp and legend aforesaid, were, on October 16, 1928, sold by the Reliance Bank and Trust Company to one Frank Burket, who remained the owner and holder of said bonds from the time of their purchase by him to the present time.

That from time to time, as the bonds and interest coupons matured, complainant, acting as the agent of its purchasers, collected such bonds and interest coupons as had matured, took them to the Reliance Bank and Trust Company, presented them for payment, collected the amounts due thereon, and distributed the same to its customers. This course of dealing occurred on seven separate and distinct occasions.

It also appears from the evidence that without the knowledge of the complainant, the interest coupons series No's. 5 and 6 falling due October 24, 1930 and April 24, 1931, respectively, together with the bonds Nos. 7 and 12 both inclusive, which matured on said dates, were paid, when presented by the complainant, by the Reliance Bank and Trust Company by the use of its funds and not canceled. Thereafter, interest coupons series No. 7 falling due October 24, 1931, were presented in a like manner to the Reliance Bank and Trust Company, and marked paid and canceled. The interest coupons falling due April 24, 1932, were also presented but were paid only in part.

It also appears that on the 15th day of August, 1932, the Reliance Bank and Trust Company together with Wm. H. Whalen, its receiver, resigned as trustee under the trust deed in question, and on the 12th day of September, 1932, the complainant was, in accordance with the provisions in said trust deed the appointed successor-trustee to the Reliance Bank and Trust Company, and it is in that capacity that the complainant instituted this proceeding for and on behalf of all the owners and holders of the unpaid bonds and interest coupons secured by said trust deed.

Frank Burket filed an intervening petition, alleging in substance that he had been defrauded in the purchase of bonds Nos. 146 to 165 both inclusive, from the Reliance Bank and Trust Company, bearing the legend, ''This is a subordinated bond,'' and asking that said bonds be decreed to be entitled to priority over all the other bonds and coupons. After a hearing, permission to file said petition was denied by the court, from which ruling the petitioner Burket has also prayed an appeal to this court and has assigned cross error.

The first point called to our attention by the complainant is that the bonds and interest coupons intro-

duced in evidence by the claimant Reliance Bank and Trust Company, were presented for payment by the complainant to this claimant in the ordinary course of business; that they were paid and should have been so marked and canceled, and that the Reliance Bank and Trust Company cannot maintain a claim as a purchaser against the complainant.

It might be stated at the outset that the decree entered in this case is not questioned in its entirety, but only as to the chancellor's finding that the described bonds and interest coupons were purchased and owned by the claimant, Reliance Bank and Trust Company, and are on a parity with the bonds represented by the complainant. This bank was the former trustee under the terms of the trust deed, now the subject of this foreclosure. The evidence indicates that the bonds and coupons were presented by the complainant to this bank for payment and the money received by the complainant, but without knowledge that they were purchased by the Reliance Bank and Trust Company by the use of its funds, and not marked paid and canceled. The Reliance Bank was named the depositary to make payments of the matured bonds and interest coupons when presented, and when bonds had matured and were presented by the complainant to this bank they were paid and the bonds and coupons marked "paid and cancelled."

The Reliance Bank and Trust Company by the use of its funds for the purpose indicated was a mere volunteer. The bank was not obligated to do this, and there is no reason advanced and none appears in the record which would justify the advancing of funds required to make payment of the matured bonds and interest coupons in question. By this voluntary act the bank as trustee without notice was estopped to make purchase of the bonds under the facts as they appear in the master's report. By this payment the claimant

bank would not be subrogated to or on a parity with the rights of the holders of the bonds represented by the complainant, and the bank being a mere stranger could not by the payment of the debt of the grantors named in the trust deed be subrogated to a creditor's rights in respect to the security given by the grantors in the land conveyed by the trust deed, who are the real debtors. The Reliance Trust and Savings Bank was not compelled to advance money in order to protect its interests upon any equitable ground which would justify the subrogation of the claimant to the bondholder's rights in respect to the security given by the grantors in the trust deed. The case of *Bennett v. Chandler,* 199 Ill. 97, clearly states the controlling rule in these words:

"The doctrine has been thus clearly and concisely stated: 'One who advances money to pay the debt of another in the absence of agreement, express or implied, for subrogation, will not be entitled to succeed to the rights and remedies of the creditor so paid, unless there is some obligation, interest, or right, legal or equitable, on the part of such person in respect of the matter concerning which the advance is made, as otherwise he is a stranger, a volunteer, an intermeddler, to whom the equitable right of subrogation is never accorded.' (24 Am. & Eng. Ency. of Law,—1st ed.— pp. 281–286.)" Then again the Supreme Court in the case of *Pearce v. Bryant Coal Co.,* 121 Ill. 590, in passing upon the right of a trustee in a trust deed to furnish money for the payment of interest coupons, held that the demand of a creditor, which is paid with the money of a third person, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished. So where a corporation gave its bonds, with interest coupons, secured by a deed of trust, and the trustee, at the request of an officer of the corporation, paid the

first set of coupons and took them up, it was held that such coupons became extinguished, and could not be enforced by the trustee so paying the same, and that they ceased to be a lien on the mortgaged property.

The holders of the unmatured bonds in the instant case had the right to insist that when the bonds were presented upon maturity and paid, they should be so marked, showing thereby the payment of the bonds. Payment of the bonds when they mature strengthens the security of the unmatured bonds. The facts in this record do not show that the purchase by the claimant bank was ratified by the bondholders. The complainant for the bondholders had no knowledge that the bank claimed to be a purchaser, and the facts are somewhat like those in the case of *Farmers' Loan & Trust Co. v. Iowa Water Co.*, 78 Fed. 881, and this decision has a material bearing upon the questions involved in the instant case. The court said:

"There can be no question under the facts, I take it, but that as between C. H. Venner and Company and the Iowa Water Company, or as between C. H. Venner and the Farmers' Loan and Trust Company, the transaction by which these different coupons passed into the hands of C. H. Venner and Company was intended by these parties as a purchase, and not a payment of the same. The evidence shows that this was done without the knowledge and without the consent of the bondholders, and that, at the time they received their money on such coupons, they supposed the transaction was a payment of their coupons, and they have never in any manner ratified it as a purchase, and, in fact, had no knowledge of it being claimed to be a purchase until the interventions were filed in this foreclosure proceeding. Under these circumstances, what are the rights and equities of the parties? These coupons were payable at the office of the Farmers' Loan and Trust Company in New York. They were remitted

by the holders of the bonds through their local banks, and sent to New York for collection. They were presented to the Farmers' Loan and Trust Company, not for sale, but for payment. They received their money, and delivered their coupons to the Farmers' Loan and Trust Company. They supposed that their coupons were paid and canceled, but, instead of that, they were delivered to Venner and Company uncanceled. If the bondholders had known this, they could, and it is reasonable to suppose that they would, have refused to sell, and, if they were not paid, would have taken prompt steps to bring about a foreclosure a number of years before this suit was commenced. The payment of the coupons strengthened the security of their bonds, but a sale of such coupons allowed the indebtedness to accumulate, and the income of the mortgaged property to go to other purposes, and the coupons, which were a first lien before their bonds, passed into other hands, and became a prior lien to their bonds.''

The compelling doubt of the claimant bank's right of parity with the bonds represented by the complainant in the instant case is this thought, that the claimant bank was the owner and holder of the bonds, and on July 24, 1928, sold and assigned to the complainant, bonds in the aggregate amount of $95,000, and the balance of the issue remaining with the claimant aggregated the sum of $10,000. By agreement of the parties these bonds were subordinated to the bonds sold to the complainant. The claimant bank transferred ownership of the bonds to the complainant, and it would be inequitable for the claimant now to deprive the bondholders represented by the complainant of any part of the bonds' value by insisting upon equality or a parity with the lien as against the complainant, who represents the bonds purchased from the claimant bank.

In Pomeroy's Eq. Juris., sec. 1203, which this court cites with approval in the case of *Kuppenheimer v.*

*Chicago Title & Trust Co.,* 163 Ill. App. 127, the language of the author is applicable in the instant case, and is as follows:

"When the mortgagee assigns one or more of the notes, and retains the remainder of the series, it is generally held that the assignee is entitled to priority of lien as against the mortgagee, with respect to the note or notes so transferred; and this rule operates without regard to the order in which the notes held by the two parties mature," and the reason for this rule is stated by the author as follows:

"The mortgagee having transferred the note and received the consideration therefor, it would be inequitable in him to deprive the assignee of any part of its value, by insisting upon a priority or even an equality of right in sharing the insufficient proceeds."

The claimant bank stresses the point that the burden of proof is upon the complainant to establish that the Reliance Bank and Trust Company is not a purchaser of the bonds and coupons in question. This position, however, is not supported by the case of *Pearce v. Bryant Coal Co.,* 121 Ill 590. Aside from the question of the burden of proof, the record discloses that the Reliance Bank and Trust Company was the depositary of funds to pay matured bonds and coupons when presented; that the bank used its own funds when the bonds in question were presented. This was done without the consent of the bondholders of the unmatured bonds represented by the complainant. The Reliance Bank, in its previous course of business conduct paid and canceled the matured bonds and coupons when presented, and upon receipt of the bonds and coupons in question, the bank did not follow this same practice by marking the bonds paid and canceled. Subsequently the bank adopted its former practice and when the matured interest coupons were presented they were marked paid and canceled by this bank. The claimant bank also seeks to distinguish the authorities cited by

the complainant in support of its contentions. Of course the facts are not all alike in the several decisions, but the rules of law applicable are not changeable with facts. In the case of *Bennett v. Chandler,* 199 Ill. 97, the Supreme Court laid down the rule applicable where a volunteer makes payment of an obligation of a third person, which is quoted in this opinion. As we have indicated, the rule of law remains the same, but from the facts it must appear that the rule is not applicable. In referring to the *Bennett v. Chandler* case, *supra,* the Reliance Bank and Trust Company points to the fact that the Chandlers were but agents to collect. It is true there was no transfer of title to the Chandlers, and in making payment they were held to be volunteers, and the court properly denied the right to recovery of the money advanced in that case. In the instant case the Reliance Bank was a depositary to pay matured bonds when presented, and by reason of its course of conduct, the bank did not by any act of its own impart knowledge to the complainant representing matured bonds that it was purchasing the bonds in question.

The remaining question to be considered is: Can the bonds secured by Burket be subordinated by agreement of the complainant and the Reliance Bank, to the rights of the bonds purchased by the complainant?

The bonds now held by Burket are clearly marked and upon an inspection of the bonds it is apparent that they are subordinated to the bonds represented by the complainant. The petition of Burket for leave to intervene was considered by the court. The court considered the petition and at the conclusion of the hearing denied leave to Burket to intervene, which was within the discretion of the court. The question of abuse of discretion is not pressed by the petitioner.

Gross error assigned by Frank Burket that fraud was practiced on him when he purchased the bonds, and that he was an innocent party, is not borne out by

the facts as they appear in the record. He purchased the $10,000 bonds clearly marked subordinated, so that there could be no misrepresentation as to what appeared on the face of the bonds, and the complainant representing $95,000 in value of bonds, cannot be charged with any representations that would affect the rights of the bondholders represented by the complainant. There is nothing in the record so far as the complainant is concerned that would justify this court in holding that false representations were made to the intervening petitioner.

Upon the question of notice to unknown owners, the record discloses that Burket had notice of the proceeding, for he appeared before the master in chancery on April 10, 1933, and testified as a witness to his ownership of bonds Nos. 146 to 165 inclusive, which were purchased by him, and the bonds were offered in evidence by the complainant, and that he did not take any steps other than indicated above, until he filed his intervening petition on October 30, 1933.

There is no merit as far as we have been able to find from the record that would justify this court in setting aside the decree denying the right to intervene.

The chancellor erred in finding that the bonds and coupons in the possession of the claimant are on a parity with the bonds and coupons represented in the foreclosure proceeding by the complainant, for the reasons stated in this opinion.

The decree is therefore reversed and the cause remanded with directions that the chancellor modify the decree to conform with the views expressed in this opinion, which are that the claimant by reason of the possession of the bonds by the Reliance Bank and Trust Company has a valid and subsisting lien against the premises involved herein and the rents, issues and profits thereof, for the sum of $12,855.19, together with interest thereon from the date of the master's report,

August 2, 1933, which are subject, subordinate and inferior to the lien of the complainant herein as successor-trustee for its benefit and as representing the bondholders, but on a parity with the bonds and coupons owned by Frank Burket for the amount appearing in the finding.

*Decree reversed and cause remanded with directions.*

WILSON and HALL, JJ., concur.